## TIMMONS v. COMMISSIONER OF INTERNAL REVENUE.

### No. 6554.

United States Court of Appeals Fourth Circuit.

Argued April 8, 1953.

Decided May 1, 1953.

Annie Mary Timmons, pro se.

Alonzo W. Watson, Jr., Spec. Asst. to the Atty. Gen. (H. Brian Holland, Asst. Atty. Gen., and Ellis N. Slack, Special Asst. to the Atty. Gen., on the brief), for respondent.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PER CURIAM.

This is the second time that this case has been before us on petition to review the action of the Tax Court. When it was here the first time, we held that the Tax Court had not made sufficient findings of fact on the issue as to whether the Commissioner in making deficiency assessments against taxpayer had correctly reconstructed the amount of her gross income for the tax years in question. We accordingly vacated the judgment of the Tax Court and remanded the case with direction to find the facts. Timmons v. Commissioner, 4 Cir., 198 F.2d 142. The Tax Court has proceeded in accordance with the mandate and has made additional and specific findings upon which it has re-entered its original judgment, which we are asked to review.

As to the method used by the Commissioner in reconstructing income the Tax Court made the following finding:

"During the taxable periods in question the source of the petitioner's gross income was rentals received from apartments owned and operated by her in the City of Columbia, South Carolina. Due to the influx of military personnel a housing shortage existed in that city and petitioner experienced no difficulty in procuring tenants whenever her apartments were available for occupancy. The books and records kept by the petitioner were insufficient and inadequate to furnish a proper source for determining the gross rentals received and the proper disbursements incurred by the petitioner in the taxable years 1941, 1942 and 1943. The bank records of the petitioner, the records of the public utility companies, business suppliers' records, rental contracts, Office of Price Administration records and other available sources of information from which the respondent reconstructed petitioner's gross income, furnished a reasonably accurate source for determining the number of apartments available and rented, the periods of occupancy and the average rentals received, and we adopt and apply such method to determine the petitioner's gross income for the taxable years in question."

As to the basis upon which the 1941 income was reconstructed, the court found:

"The OPA was not in existence in 1941 and no records from that source were available for the taxable year 1941. It appears * * * that the rentals charged by the petitioner in 1941 were substantially equivalent to the prices fixed by the OPA and in effect for unfurnished apartments in the years 1942 and 1943. The average OPA price for 1942 and 1943 was $50 per month for unfurnished apartments of the character of those rented by the petitioner. In 1941 the petitioner had available and rented 35 unfurnished apartments. The periods of vacancy due to turnover, repairs and redecorating, we estimate to be 15 per cent of the year. An annual rental of $600 per

year for 35 apartments, equaling $21,000, less 15 per cent for vacancies, or $3,150, gives a resultant figure of $17,850, an amount slightly in excess of the amount of $17,550 determined by the respondent. The petitioner received gross income from rentals of not less than $17,550 in the taxable year 1941."

No deficiencies were assessed for 1942.

As to the basis upon which the 1943 income was reconstructed, the court found:

"In the taxable year 1943 the petitioner owned and operated 64 apartments which she rented unfurnished at an average rental of $50 per month per unit. In addition, by separate contract, the petitioner rented some household furnishings for approximately one-half of the year 1943, when the furnishings were sold to a third party. The additional income of the petitioner from such source is fixed at an average of $5 per month for the 64 units, making an average total rental of $55 per month per unit. Since the 30 new units acquired in 1942 were a year older, the periods of vacancy were slightly increased and estimated to be 14 per cent of the entire year 1943. An annual rental of $660 per unit for 64 apartments, equaling $42,240, less 14 per cent for vacancies, or $5,913.60, gives a resultant figure of $36,326.40. Using round figures we find that the petitioner received gross income from rentals of $36,000 in the taxable year 1943."

We must accept these findings of the Tax Court unless satisfied that they are clearly wrong, and we are not so satisfied. The fact that they are necessarily based upon estimates and approximations is no reason for not accepting them. Harris v. Com'r, 4 Cir., 174 F.2d 70. As we said in our former opinion herein, "absolute accuracy of detail is not essential" and "it is proper to estimate income on the basis of facts which indicate its approximate amount." The evidence shows that taxpayer's apartments were in the City of Columbia, S. C., which was suffering a housing shortage during the tax years in question

and that there was no reason why the apartments should not have been rented during the entire time. The allowance made for vacancies was based upon the record of gas service furnished the apartments and seems a very liberal allowance. The rental adopted was based upon O.P.A. records and cancelled checks. Taxpayer complains because the Commissioner and the Court did not confine their calculations to the contracts with tenants, which she produced; but neither the Commissioner nor the Court was bound to accept these as a correct record of the rents which she had received. In view of the fact that she had kept no books and had refused to aid the government agents in any way in ascertaining her true income, she is in no position to insist that records of this sort be accepted as indubitable proof, especially when they show a total income of less than that which she should have received for apartments in view of the housing shortage and the prevailing rate of rental.

Affirmed.