**V. F. BOND and Audrey A. Bond,**
**V. F. Bond, Petitioners,**

v.

**COMMISSIONER OF INTERNAL**
**REVENUE, Respondent.**

No. 7131.

United States Court of Appeals
Fourth Circuit.

Argued March 22, 1956.
Decided April 9, 1956.

Ellsworth T. Simpson, Washington, D. C., for petitioners.

Stanley P. Wagman, Atty., Dept. of Justice (Charles K. Rice, Acting Asst. Atty. Gen., Lee A. Jackson and Robert N. Anderson, Attys., Dept. of Justice, on the brief), for respondent.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This is a petition to review two decisions of the Tax Court of the United States imposing deficiency assessments of $162,942.87 and fraud penalties of $81,471.46 for the years 1942 to 1947, inclusive, against V. F. and Audrey A. Bond, husband and wife. The proceedings were docketed as two separate actions, the first for the years 1941 and 1942, against V. F. Bond, and the second for the years 1943 to 1947, against V. F. Bond and Audrey A. Bond. They were consolidated for hearing and decision.

The matter originated as a civil action with the issuance, by the Commissioner, of a statutory notice of deficiency dated March 8, 1950, against V. F. Bond (hereinafter called the taxpayer) and his wife. The deficiency was predicated upon increase in taxpayer's net worth for the years 1941 to 1947, inclusive, and included the 50% fraud penalty provided for by Section 293(b) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 293(b).

The Tax Court found that the taxpayer received the amounts of income as determined by the Commissioner by use of the net worth and expenditures method and as alleged in his amended answers, except that second trust notes received by the taxpayer upon the sale of real estate are to be included in the net worth computation at their fair market value rather than at their face value. The Tax Court further found that a part of the deficiencies for each year was due to fraud with intent to evade tax.

For the purposes of this review, two questions are before us.

(1) Whether the Tax Court's determination of deficiencies in income taxes based upon increases in the taxpayer's net worth was clearly erroneous.

(2) Whether the Tax Court's determination that such deficiencies were due to fraud with intent to evade tax was clearly erroneous.

We find neither determination clearly erroneous. The decisions of the Tax Court must, therefore, be affirmed.

Various facts were stipulated by the parties and were incorporated by reference into the Tax Court's Findings of Fact. They included the amounts of taxpayer's bank deposits and cash balances at his bank throughout the tax years in question and the amount of his federal income tax payments for these years. In addition, the Tax Court made the following relevant Findings of Fact:

"V. F. Bond * * * and his wife, Audrey A. Bond, were residents of Arlington, Virginia, during the years in question. Petitioner filed an individual return for the taxable year 1942, and he and his wife filed joint returns for the remaining years in issue—all with the collector of internal revenue for the district of Virginia.

"Petitioner operated a retail coal and lumber business, a hotel business, a restaurant, a filling station, and a fuel oil business during the year in issue. He also built, remodeled, and sold houses and dealt extensively during the last 2 years in issue in second trust notes secured by real property. Petitioner employed a bookkeeper but personally prepared much of the information from which his attorney made up his income tax return each year.

"Respondent determined that the returns which the petitioners filed did not correctly reflect their true income and, by use of the net worth and expenditures method, determined that they received income far in excess of that reported on their returns. The petitioners do not contest the respondent's right to use the net worth method. Set forth below are the amounts of income or loss reported by petitioners on their returns, the increase in their net worth which they concede occurred during the years in issue, the increase in

their net worth determined by the respondent, and, by the addition thereto of uncontested amounts of nondeductible expenditures, the amounts of income which he determined they received:

| Year | Income Reported | Conceded Increase in Net Worth* | Respondent's Determination of Increase in Net Worth* | Respondent's Determination of Income |
|------|------|------|------|------|
| 1942 | $(8,336.38) | $18,550.54 | $ 18,361.19 | $22,561.19 |
| 1943 | 9,585.89 | 22,939.18 | 25,713.22 | 30,545.82 |
| 1944 | 1,176.11 | 49,086.41 | 49,114.47 | 54,886.72 |
| 1945 | 5,515.46 | 65,346.93 | 64,881.50 | 67,457.66 |
| 1946 | 16,894.57 | 41,140.53 | 139,385.68 | 74,802.33 |
| 1947 | 32,487.05 | 86,911.05 | 82,185.32 | 94,555.32 |

\* Not adjusted for nontaxable portions of long-term capital gains.

\* \* \* \* \* \*

"Petitioner owned real estate located at 2805 Jefferson Davis Highway, Arlington, Virginia, which he purchased in 1937 for $15,000. He operated his retail coal and lumber business as well as his hotel and restaurant on this property. From 1937 to 1939, he made improvements to the property consisting of a railroad siding, a coal unloading trestle, a reinforced concrete warehouse, excavation and dirt removal, concrete paving, and the addition of large weighing scales. Petitioner's returns for 1938 and 1939, when most of the improvements were made, show large expenditures under the caption "Merchandise bought for sale," in his computation of cost of goods sold. There were also large expenditures for repairs. No depreciation was ever claimed on any depreciable improvement on returns for subsequent years, including those in issue. A part of the property was sold in 1946 for $55,000. On his return for that year, the petitioner claimed a cost basis of $91,000, and a long-term loss of $36,000.

"Petitioner maintained no inventory records during the years in issue. On a financial statement filed with an Alexandria, Virginia, bank in 1947 for the purpose of obtaining a loan, petitioner stated that he had 'other income' of $60,000 per year, and understood that statement to mean 'net' income. Later in that year, he wrote a letter to another Alexandria bank, stating that his net worth was $735,184.09.

"Petitioner received the amounts of income as determined by respondent by use of the net worth and expenditures method and as alleged in his amended answers, except that second trust notes received by petitioner upon the sale of real estate are to be included in the net worth computation at their fair market value as herein determined rather than at their face value.

"A part of the deficiencies for each year was due to fraud with intent to evade tax."

Taxpayer refers us to additional facts in the record which he feels are vital to the decision in this case. Specifically, the record discloses that taxpayer's education was limited to the seventh grade, his knowledge of bookkeeping was limited, that during the "war years" in particular he worked long hours, and that his books and records for the years 1940 to 1943 had been destroyed prior to 1947 and were thus unavailable when the examination began. Further, taxpayer points out that the record reveals that the Commissioner on review did not find any omission of income in his books for the years 1944 to 1947 nor omission of income from interest, rent or discount income in the tax returns filed by tax-

payer for the years 1941 to 1945 (except one check in 1944; there were omissions of discount income in 1946 and 1947); that testimony of a certified public accountant who audited taxpayer's books and records for the years 1944 to 1947 indicated that such books failed to distinguish between capital expenditures and operating expenses; and that for the tax years in question, and with the exception of taxpayer's bank account, the Commissioner on review constructed the net worth principally from information appearing in taxpayer's income tax returns.

The first question, which relates to the deficiencies in income tax determined by the Tax Court upon the basis of the net worth plus personal expenditures method, involves now two specific items of controversy. They are (1) the failure to include in taxpayer's opening net worth the cost of improvements which he made to property at 2805 Jefferson Davis Highway sometime prior to December 31, 1941; and (2) the Commissioner's failure to include inventories in the net worth computation. As to both items, the Tax Court concluded that the taxpayer failed to sustain the burden placed upon him to overcome the presumptive correctness of the Commissioner's determination of the deficiencies. We find ample support for this conclusion.

The nature of taxpayer's complaint is that the Tax Court acted arbitrarily, in constructing his net worth from information appearing on his income tax returns but ignored the inventory which appeared on his return as of December 31, 1940; and in excluding certain assets from taxpayer's net worth because he had erroneously expensed them.

As to the exclusion of taxpayer's improvements, the Tax Court noted that taxpayer conceded that one of the reasons his books and records were not accurate was because he had expensed certain items which were capital in nature. Taxpayer testified as to the cost of these improvements; but had no records of any kind to substantiate his testimony. In fact, the only evidence offered by taxpayer on this point was his own testimony.

Clearly, some of the claimed improvements were not paid for by the taxpayer, as was the case of the major portion of the railroad siding. Taxpayer sought to claim no depreciation on these depreciable improvements. In addition to its inability to make any determination of the cost of the alleged improvements, the Tax Court had grave doubts as to whether such improvements were, in fact, capital in nature rather than deductible expenses in the year when made. Too, the Tax Court was rightly concerned, we think, with the taxpayer's reaping an immediate tax benefit by expensing such items the year when made and now taking a contrary position and reaping a double tax benefit therefrom.

We conclude on this point that these were all matters which the Tax Court properly considered, going to the weight of the evidence and the credibility of the witnesses. The findings of the Tax Court are not clearly erroneous and will not be upset by this Court. Pusser v. Commissioner, 4 Cir., 206 F.2d 68; Timmons v. Commissioner, 4 Cir., 203 F.2d 831, certiorari denied 346 U.S. 860, 74 S.Ct. 77, 98 L.Ed. 372.

As to the exclusion of taxpayer's inventories, the Tax Court said:

"Insofar as inventories are concerned, petitioner admitted that he kept no inventory records, but argues that inventories should have been included in the net worth computation. By not including inventories in such computation, the respondent assumed that they remained relatively constant during the years in question. There is no showing in the record that that is an unreasonable assumption and we conclude that he did not err by failing to include inventories in his computation of income. Vassallo, 1955, 23 T.C. 656."

We think this result is neither clearly erroneous nor arbitrary, when it is considered that taxpayer admittedly kept no inventory records; that he was unable to prove the inventory figures which he claimed; and that, in the light of this and taxpayer's exaggerations as to other items, the Commissioner concluded that at best, these figures were haphazard guesses.

Taxpayer has admitted that uniform elimination of inventories throughout the net worth computation, if relatively constant, had no appreciable effect on the computation. It is apparent that taxpayer has not proved that such inventories, if they existed, were not relatively constant. The Tax Court's conclusion must be sustained.

■■ The final matter for our consideration relates to the 50% fraud penalty imposed upon taxpayer for fraudulently filing returns for the years 1942 to 1947, inclusive, with intent to evade taxes. The burden of proof was upon the Commissioner to show by clear and convincing evidence that these returns were fraudulently filed. We think the Tax Court's Finding of Fact that a part of the deficiencies for each year was due to fraud with intent to evade tax is clearly proved and should be upheld. Staudt v. Commissioner, 4 Cir., 216 F.2d 610; Greenfeld v. Commissioner, 4 Cir., 165 F.2d 318.

The Tax Court was impressed with the fact that taxpayer's understatements of income were too large, too consistent, over too long a period, to be attributable to mere inadvertence or error. Taxpayer had conceded that his income in each of the tax years in question was at least twice as great, and sometimes many times greater, than that reported on the returns. Compare, for example, the year 1944 when taxpayer reported income of $1,176.11 and the Commissioner determined the amount to be $54,886.72. This was considered as highly persuasive evidence of fraudulent intent by the Tax Court, which cited in support Kilpatrick v. Commissioner, 22 T.C. 446, affirmed, 5 Cir., 227 F.2d 240; Rogers v. Commissioner, 6 Cir., 111 F.2d 987; and Vassallo v. Commissioner, 23 T.C. 656.

Taxpayer argues, however, that large understatements alone are not sufficient evidence of fraud, relying on Wiseley v. Commissioner, 6 Cir., 185 F.2d 263, reversing 13 T.C. 253, and upon Switzer, 20 T.C. 759, and asserts that the record is devoid of any evidence clearly showing fraudulent conduct by the taxpayer. He further complains that the Tax Court failed to set forth any conduct which could be reasonably construed as indicative of fraudulent intent.

We find taxpayer's claims unfounded. True, the Tax Court was impressed with the size of the understatements; it was also impressed, we think, with the size and extent of taxpayer's operations; his method of personally preparing much of the data and summaries for his attorney to use in preparing his tax returns; his questionable testimony; and the absence of ordinary business records, many of which had been destroyed some time prior to this examination. All these, we think, lend ample support to the Tax Court's finding.

The decisions of the Tax Court are affirmed.

Affirmed.