Herbert C. CAMIEN and Melita B. Howard, Formerly Melita B. Camien, Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

No. 19454.

United States Court of Appeals Eighth Circuit.

Jan. 16, 1970.

Norman C. Parker, St. Louis, Mo., for appellants, William J. Becker, Clayton, Mo., on brief.

Leonard J. Heinzke, Atty., Dept. of Justice, Washington, D. C., for appellee, Johnnie M. Walters, Asst. Atty. Gen., and Lee A. Jackson, Joseph M. Howard and John M. Brant, Attys., Dept. of Justice, Washington, D. C., on brief.

Before VAN OOSTERHOUT, Chief Judge, and MATTHES and HEANEY, Circuit Judges.

MATTHES, Circuit Judge.

Appellants seek review of two decisions by the United States Tax Court filed on June 11, 1968.[1] In Tax Court Docket Number 1746–65 the court found that appellant Herbert C. Camien had failed to file a federal income tax return for the year 1951, and assessed a tax deficiency and penalty in the amount of $509.21. In Tax Court Docket Number 1747–65 the court found that Herbert C. Camien and Melita B. Camien (now Melita B. Howard), as husband and wife, had fraudulently understated their income in joint returns filed for the years 1952, 1953, 1954 and 1955, and assessed deficiencies and penalties in the amount of $79,950.78. On September 11, 1968, pursuant to Int.Rev.Code of 1954 §§ 7482, 7483, appellants filed a petition for review of Number 1747–65.[2]

Appellants raise for our consideration the following three issues:

I. Whether the Tax Court erred in finding that Herbert C. Camien had failed to file a federal income tax return for the year 1951 and therefore owed a tax deficiency and penalty for that year;

II. Whether the Tax Court erred in its finding that appellants understated their income in the years 1952 through 1955, and were thereby liable for deficiencies for those years;

III. Whether the Tax Court erred in finding that appellants understated their income in the years 1952 through 1955 with the fraudulent intent to evade taxes, and were thereby liable for the penalties assessed.

For the reasons stated below we affirm.

## I. 1951 DEFICIENCY

■ Appellant Herbert C. Camien failed to file either a petition for review or notice of appeal with respect to decision Number 1746–65 which assessed a deficiency and penalty for the year 1951. Because of his failure to comply with this essential requirement, we hold that he has failed to preserve his right to appellate review pursuant to Int.Rev.Code of 1954 §§ 7482, 7483, and Rule 13 Fed. R.App.P.

## II. 1952–1955 DEFICIENCIES

Appellants also urge that the Tax Court erred in finding that they had understated their income on their joint returns for the years 1952 through 1955. Because appellants' records for the years in question were deemed inadequate, the Commissioner chose to prove the alleged deficiencies by means of the net worth method—a method of proving income which has received judicial sanction. E.g., Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954); Banks v. Commissioner, 322 F.2d 530 (8th Cir. 1963); Gunn v. Commissioner, 247 F.2d 359 (8th Cir. 1957). Under this method of proving income, the Commissioner establishes an "opening net worth" for the beginning of the period in which a delinquency is alleged. Increases in the taxpayer's net worth as of the end of the tax year in question plus the taxpayer's nondeductible expenditures for that year, to the extent that their sum exceeds his net reported income, represent unreported taxable income for the year in question.

---

1. Unofficially reported in 37 P-H Tax Ct. Mem. 65 (1968).

2. Appellants' Petition for Review has been treated as a notice of appeal, the current means of obtaining review of a Tax Court decision. Rule 13 Fed.R.App.P.

Several legal principles are controlling in this case. The "opening net worth" of the taxpayer must be established with reasonable certainty, and in establishing net worth the Commissioner owes a duty to the taxpayer of approaching the problem fairly and open-mindedly. Holland v. United States, supra; Banks v. Commissioner, supra; Gunn v. Commissioner, supra. Once so established, the Commissioner's calculation of "opening net worth" carries with it a presumption of correctness and the taxpayer bears the burden of disproving the Commissioner's determination. Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212 (1933); Banks v. Commissioner, supra; Schroeder v. Commissioner, 291 F.2d 649 (8th Cir. 1961), cert. denied, 368 U.S. 985, 82 S.Ct. 598, 7 L.Ed.2d 523 (1962). Since the net worth method is a means of reconstructing income, assets are generally listed at their cost rather than at their current market value. 2 Mertens Federal Income Taxation § 12.12, ch. 12, p. 63 (1967). Cf. Holland v. United States, supra; Bond v. Commissioner, 232 F.2d 822 (4th Cir.), cert. denied, 352 U.S. 878, 77 S.Ct. 100, 1 L.Ed.2d 79 (1956). Last, and most important for this case, the clearly erroneous rule is applicable to findings of fact of the Tax Court. Factual determinations of that court will not be set aside by the reviewing court unless it is demonstrated that such findings were clearly erroneous. E. g., Commissioner v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960); Banks v. Commissioner, supra; Schroeder v. Commissioner, supra.

We do not understand appellants to dispute the appropriateness of the net worth method of computation. Rather, their complaint is that the Commissioner and the Tax Court erred in reconstructing their income using the net worth method.[3] While there exists some controversy over several findings of the Tax Court, two items on the "opening net worth" statement constitute the principle grounds of dispute between the parties. Appellants urge that as of December 31, 1951, they had $44,000 cash on hand and owned stock in Pacific Sand and Gravel Company with a basis of $50,000. The Tax Court found that appellants had but $25,000 cash on hand, and that the stock in Pacific had no basis in the hands of appellants.[4]

As to the $19,000 cash, appellants contend that it was kept in a "strong" box at their residence. The money was purportedly derived from two gifts to Herbert. In 1944 Herbert's then father-in-law was said to have given Herbert $9,000, and a letter was offered in verification of that gift. The remaining $10,000 supposedly came to Herbert from a trust executed in 1938 by Mary L. Brace, a woman who had cared for Herbert's former wife. A document setting forth the terms of the trust was produced at trial.

The Tax Court declined to credit Herbert's explanations concerning the $19,000. First, it was noted that Herbert's testimony had been inconsistent, evasive, and unreliable. Second, in 1947, when faced with tax liabilities for preceding years, Herbert made a sworn statement

---

3. The following table illustrates the ultimate findings of the Tax Court.

| | 1951 | 1952 | 1953 | 1954 | 1955 |
|---|---|---|---|---|---|
| Net Worth | $46,818.76 | $53,917.75 | $88,370.03 | $88,652.69 | $94,376.83 |
| Total Unreported income | | $ 5,894.93 | $73,657.06 | $ 9,787.17 | $26,744.07 |

---

4. The Tax Court did find that Pacific Sand and Gravel Company was indebted to appellant Herbert C. Camien for $25,000 worth of materials and supplies contributed by Herbert to the Company. This amount was credited to Herbert in the "opening net worth" statement.

that he owned nothing save a $5,000 life insurance contract and a contingent claim for $1,600 against Crown Can Company of Philadelphia, Pennsylvania. As the court recognized, this sworn statement is inconsistent with Herbert's present explanation as to the existence and source of the $19,000 cash supposedly present in the box.

The second major source of dispute is the evaluation of appellants' interest in Pacific Sand and Gravel Company as of December 31, 1951. Pacific was incorporated July 1, 1951, for the purpose of mining gravel along the Meramec River in Eastern Missouri. A total of five hundred shares of stock were issued with Herbert receiving two hundred shares.[5] Pursuant to a lease-purchase agreement, Pacific leased equipment from a sand and gravel mining firm which had previously operated along the Meramec. Pacific, through the efforts of Herbert, also obtained mining leases from the owners of property abutting the river. The leases were carried on Pacific's books as a $50,000 asset. At one point in the Commissioner's investigation Herbert contended that he had paid one Charles E. Ewing $50,000 for the leases. However, the Tax Court found that the leases had been obtained directly from the owners of the land and that the only consideration passing from Pacific to the owners was the promise of a three cent per ton royalty for gravel actually removed. Accordingly, the court held that neither Herbert nor Pacific had any basis in the mining leases. We find no fault with the Tax Court's

finding and appellants do not seriously question it.

Appellants, however, do urge that the Pacific stock had a basis of $50,000 as of December 31, 1951,[6] notwithstanding the mining leases. Charts of sand and gravel borings were purportedly purchased by Herbert from Arthur U. Simmons at a cost of $25,000. Cancellation of a note for $24,500 which Simmons owed Herbert and payment of $500 in cash to Simmons supposedly served as the consideration for the charts. The note was said to have been given in 1948 either for shares in a canning company, or for warehouse receipts covering products manufactured by the company.[7] These boring charts were allegedly transferred by Herbert to Pacific in 1951.

Herbert's testimony on this matter, as on others, was inconsistent and evasive. He attempted to explain the fact that the note was given 5 years after the canning company had gone bankrupt, by stating that he and Simmons had a dispute over the form of payment. As noted, earlier in the investigation of appellants' tax liabilities, Herbert had produced documents showing that the $50,000 basis in Pacific stock was due to mining leases which were purchased for that amount from one Charles Ewing. However, at trial the appellants changed their story and admitted that Ewing was a fictitious person. No mention was made of the boring charts earlier in the investigation, and, while Pacific's books carried the mining stock as a

---

5. The other original stockholders were Arthur U. Simmons, who owned 250 shares, and Ludwig Mayer, who owned 50 shares. However, in October of 1952 the stock certificates of both Simmons and Mayer were cancelled, and 250 shares were issued to Melita and 50 shares were issued to Donald R. Camien, Herbert's son. Thus, in 1953, when Pacific's assets were sold, the Camiens were the sole stockholders in the company.

6. It is not clear whether appellants argue that the basis in their Pacific stock was $50,000 or rather that Pacific was in-

debted to them for $50,000. However, for the purposes of this appeal the distinction is not important, since in either case appellants' "opening net worth" would be correspondingly increased.

7. Herbert's testimony as to this item was inconsistent. It appears, however, that he finally agreed that the note was given for warehouse receipts rather than stock. The warehouse receipts allegedly covered canned asparagus which was claimed to have been stockpiled in the years following the canning company's bankruptcy.

$50,000 asset, the boring charts were not itemized. Moreover, the Tax Court retained some reservation as to the alleged value of the boring charts, and Herbert's testimony did little to displace the court's doubts.

Appellants also contend that they contributed two engines and a tractor with a total value of .$25,000 to Pacific as part of their original investment in the company. This contention was contradicted by the testimony of the manager of Pacific. And, while appellants did introduce invoices with machine numbers in support of their contention, it was shown by the Commissioner that machines with those numbers were sold to persons, other than appellants, who lived outside of Missouri, and who had retained the machines past the date when appellants had allegedly purchased them.

■ In summary, appellants' case before the Tax Court rested almost exclusively on the testimony of Herbert. Frequently, as observed by the Tax Court, his testimony was elusive, inconsistent, and equivocal. In many instances it was controverted by credible documentary evidence. What records appellants did produce were incomplete and in some instances of questionable authenticity. Lastly, the court was aware that Herbert had pled guilty to willfully evading income taxes for the years 1953 and 1955. It was also observed that Herbert had been assessed tax deficiencies in the 1940's. In the face of this, the Tax Court's refusal to accept Herbert's explanations concerning appellants' net worth as of December 31, 1951, is both understandable and justified. Banks v. Commissioner, supra at 537; Lessmann v. Commissioner, 327 F. 2d 990 (8th Cir. 1964).

In view of the above discussion, and after reviewing the entire record, we have reached the firm conviction that the findings of the Tax Court are supported by substantial evidence as to appellants' income for the years 1952 through 1955 and were not induced by an erroneous view of the law. United States v. United States Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948); Lessmann v. Commissioner, supra.

### III. 1952–1955 FRAUD

There remains the question of whether the Commissioner met his burden of proving that appellants fraudulently understated their income for the years 1952 through 1955. A finding of fraud is required for two reasons. First, fraud on the part of the appellants is necessary to sustain the penalties assessed by the Tax Court. Secondly, absent a showing of fraud, the statute of limitations would bar an assessment of the deficiencies for the years in question.[8]

The legal principles relevant to a finding of tax fraud are well settled and succinctly set forth in the following statement by Judge Van Oosterhout, now Chief Judge:

"It is clear that the burden is upon the Government to establish fraud * * * by clear and convincing evidence.

The question of whether a substantial understatement of income is due to fraud ordinarily presents an issue of fact. Fraud is never presumed. Fraud may be established by direct or circumstantial evidence. Taxpayer's failure to overcome the presumption of correctness of the Commissioner's determination of a tax deficiency will not, standing alone, support a finding of fraud. However, a consistent pattern of underreporting large amounts of income over a period of years is substantial evidence bearing upon an intent to defraud, particularly in situations where no satisfactory explanation for such understatement is forthcoming. [Citations]

---

8. Both the 1939 and the 1954 Codes provide for a three year statute of limitations, the running of which is suspended in the case of false or fraudulent returns. Int.Rev.Code of 1954 § 6501(a), (b); Int.Rev.Code of 1939 §§ 275(a), 276(a).

The clearly erroneous standard applies to findings made by the Tax Court. Findings supported by substantial evidence on the record as a whole which are not against the clear weight of the evidence or induced by an erroneous view of the law will not be disturbed upon appeal." Lessmann v. Commissioner, supra at 993. (citations omitted).

 As previously discussed, appellants, during the years in question, consistently understated their income on the returns filed with the Commissioner. While this standing alone might not, in the instant case, support a finding of fraud, it certainly constitutes strong evidence of same, particularly where, as here, appellants fail to satisfactorily explain the understatements. However, in this case it does not stand alone, for the Tax Court found specific items of income in each of the years in question which were not reported by appellants. For example, the court found that Herbert received in the years 1952, 1953, 1954 and 1955 $2,500, $150, $3,200 and $6,000 respectively from an Otto Wilke for aiding Wilke in the filing of his income tax returns. None of these sums was reported by appellants in their joint returns for the years in question. Moreover, the court found that Herbert failed to even mention in his 1953 return $50,000 which he received in a transaction occurring in that year, nor did Melita report income received in 1953 and 1954 from a corporation in which she was a substantial stockholder. All of these factual findings were supported by the evidence and were certainly not clearly erroneous.

In view of the above evidence, as well as our examination of the record, we believe that the government demonstrated to the Tax Court by clear and convincing evidence that part of the appellants' deficiency in tax for each of the years in question was due to fraud with intent to avoid the payment of taxes. Lessmann v. Commissioner, supra.

Affirmed.