KENNETH L. SEAY AND MYRA W. SEAY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Seay v. Commissioner
Docket No. 22605-80.
United States Tax Court
T.C. Memo 1983-175; 1983 Tax Ct. Memo LEXIS 610; 45 T.C.M. (CCH) 1148; T.C.M. (RIA) 83175; March 31, 1983. *610 A trust, of which petitioners were trustees but not beneficiaries, transferred a parcel of real estate to a subchapter S corporation wholly owned by H, for no proven consideration. Held: H's basis in his stock in the subchapter S corporation was not increased by the value of the property transferred to the corportion by the trust, and H's deduction for the net operating loss of the subchapter S corporation is limited to his basis in the stock. Sec. 1374, I.R.C. 1954. R. Braxton Hill III, for the petitioners. Scott D. Anderson, for the respondent. DRENNEN
MEMORANDUM OPINION DRENNEN, Judge: Respondent determined deficiencies in petitioners' 1975 and 1976 Federal income tax in the amounts of $46,731 and $4,563, respectively.
The sole issue is the amount of the deduction to which petitioners are entitled on account of a net operating loss incurred by Kenneth's subchapter S Corporation in 1975. [1]
This case was submitted fully stipulted pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The stipulated *611 facts and exhibits attached thereto are incorporated herein by this reference. Petitioners Kenneth L. Seay (petitioner) and Myra W. Seay, husband and wife, resided in Virginia Beach, Va., at the time of filing their petition herein. For the taxable years 1975 and 1976, they filed joint Federal income tax returns with the Internal Revenue Service, Memphis, Tenn.
On july 30, 1964, Lafayette Villa, Inc., a corporation owed by petitioner and his brother, purchased real property in Norfolk, Va., hereinafter referred to as the 39th St. property. Lafayette Villa, Inc., sold the property to petitioner and his brother on November 22, 1965, for $34,975. [2]
On November 12, 1971, petitioner and his brother and their respective wives executed a "Deed of Partition" whereby, inter alia, the 39th St. property was transferred to petitioners as trustees of a trust created on the same date. The beneficiaries of the trust were petitioners' four children and petitioners had no beneficial interest therein under the terms of *612 the trust. The trust instrument granted petitioners, as trustees, the following powers: Said trustees, or either of them if the other is unwilling or unable to act, shall have full power and authority to manage and control this trust estate, and to sell, convey, exchange, lease (for terms which may extend beyond the termination of the trust), rent, assign, transfer, or otherwise dispose of all or any part thereof upon such terms and conditions as they may in their discretion deem proper, and may invest and reinvest all or any part of the trust estate in such common or preferred stocks with a rating of B or better, bonds, debentures, mortgages, deeds of trust, notes, or other securities, investments, or property which they in their absolute discretion may select or determine, it being the express desire and intention that said trustees shall have full power to invest and reinvest the trust funds without being restricted to forms of investments which trustees may otherwise be permitted by law to make, and without any requirement as to diversification of investments, and said trustees may continue to hold, in the form in which received, any securities or other property which they may *613 at any time acquire hereunder; and may invest any part of the funds in property located outside of the State of Virginia. * * * On January 1, 1974, Lafayette Villa, Inc., sold to Second Lafayette Villa, Inc. (Second Lafayette), a corporation formed and wholly owned by petitioner, a lot adjacent to the 39th St. property. This lot was reflected on Second Lafayette's 1974 tax return as having been purchased for $6,219. On January 1, 1974, the trust conveyed title to the 39th St. property to Second Lafayette. The property had a fair market value of $86,900 at that time. Petitioner's basis in his stock in Second Lafayette was $2,000 at the time of the transfer, as reflected on the company's 1974 corporate income tax return. Second Lafayette reported no taxable income on its 1974 return. The trust did not report a sale or exchange of the 39th St. property on any Federal income tax return. No cash, promissory notes, or other documents were transferred, either by petitioner or Second Lafayette, as consideration for the transfer. Second Lafayette did not record the transfer on its books until 1975. Its 1975 tax return indicated an increase in its real estate holdings of $86,900 and *614 an increase in its capital stock from $2,000 to $88,900. In 1974, Second Lafayette began construction of a new nursing facilities on the 39th St. property and the Lafayette Villa property. In 1975, petitioner was the president and sole stockholder of Second Lafayette. On August 2, 1976, a delayed organizational meeting of the board of directors of Second Lafayette was held.
On January 29, 1975, Second Lafayette properly elected to be taxed as a small business corporation (otherwise known as a subchapter S corporation) pursuant to section 1372, [3] commencing for the taxable year 1975. Second Lafayette incurred and reported a net operating loss for the taxable year 1975 of $100,284. Petitioner deducted $88,900 of that loss on his joint return filed for the same period. In his notice of deficiency, respondent disallowed $86,900 of the deduction claimed by petitioner. On or about September 2, 1976, petitioner gave all of his stock in Second Lafayette to Myra Seay. No gift tax return was filed by petitioner reporting this transaction. The sole issue is whether *615 the transfer of real property by a trust of which petitioners were trustees but not beneficiaries to a subchapter S corporation wholly owned by petitioner resulted in an increase in petitioner's basis in his stock in such corporation, thereby entitling him to a greater deduction pursuant to section 1374. Generally speaking, section 1374(a)[4] *616 provides a deduction for shareholders of a subchapter S corporation to the extent of such corporation's net operating loss. The deduction allowed is limited, however, to, inter alia, the shareholder's adjusted basis in the stock of the corporation.Sec. 1374(c)(2). Here, it was stipulated that Second Lafayette incurred a net operating loss of $100,284 for the taxable year 1975. Therefore, petitioner, as *617 the sole shareholder of Second Lafayette, is entitled to deduct this loss, but only to the extent of his adjusted basis in his stock. There is no dispute that petitioner had at least a $2,000 basis in his stock; rather the issue for decision is whether the transfer of the 39th St. property from the trust to Second Lafayette increased petitioner's basis in his stock by $86,900 or any other amount. Petitioner has the burden of proof to establish the increased basis claimed. Rule 142(a), Tax Court Rules of Practice and Procedure. We cannot find that petitioners have carried that burden, based on the facts as stipulated. Petitioner's argument with respect to the transfer from the trust to Second Lafayette of the 39th St. property is best summed up by the following assertion made on brief-- the transfer by the trustee of trust property out of the trust to or for the trustees' own benefit creates an obligation and indebtedness by the trustee to pay the trust an amount equal to the property transferred. * * * Petitioner's cost basis in the 39th Street property acquired out of the trust was $86,900, the amount of the obligation and indebtedness petitioner incurred in acquiring the property *618 from the trust. According to petitioner, the transfer of the 39th St. property was for his own benefit, and therefore created a debt from him to the trust equal to the property's fair market value, or $86,900. Petitioner cites Norman's Ex'x. v. Cunningham & Wife et als., 5 Gratt, (46 Va.) 63 (1848), in support of this argument. That debt, he argues, was his cost basis in the property pursuant to section 1012. Petitioner further asserts that his stock basis in Second Lafayette was increased by the same amount upon the transfer of the property to Second Lafayette pursuant to section 358(a)(1). [5]
Initially, we find that petitioners' theory is based on a losely knit fabrication that is not supported by the record and will not withstand close scrutiny.It is stipulated that the 39th St. property was transferred to the trust in 1971 by "Deed of Partition" from petitioner and his *619 brother and their wives. There is no evidence that any consideration was paid. It is also stipulated that the Seays had a basis in the 39th St. property of $6,631.24, so it can be assumed that the trust's basis in that property was the same. It is further stipulated that in January 1974, the trust [6] conveyed title to the 39th St. property, which at the time had a fair market value of $86,900, to Second Lafayette. There is no evidence that there was a transfer to petitioner first and then a transfer by him to Second Lafayette, nor of the reason for the transfer, nor that petitioners were authorized to make the transfer, nor that the transfer was made for petitioner's benefit. It is also stipulated that no sale or exchange of the property has been reported by the trust on any income tax return and that the trust received no cash, promissory notes or other documents as consideration for the transfer; and that the transfer of the 39th St. property was not recorded on the books of Second Lafayette in 1974 but was recorded in 1975 showing a cost basis of $86,900. Schedule L of Second Lafayette's tax return for 1974 reflects only the acquisition of land having a value of $6,219.00 (the *620 Lafayette Villa property), but Schedule L of the corporation's return for 1975 reflects an increase in the value of its land of $86,900 and a similar increase in the value of its capital stock. There are no corporate minutes in the record that explain how or why the transaction occurred. And finally, petitioners' individual income tax return for 1975, [7] while reporting the sale of two other pieces of real estate on the installment basis, does not report a sale of the 39th St. property. Petitioners argue that in tax matters, substance must prevail over form and that the lack of formal documentation should not affect the characterization of a transaction, citing Litton Business Systems, Inc. v. Commissioner,61 T.C. 367 (1973). That proposition is not applicable here because there is no evidence that the substance was any different than the form, i.e., that the trust conveyed title to the property direct to Second Lafayette. This poses a problem for petitioners because *621 in order for petitioners to prove a stepped-up basis in the property, they would have to prove a sale of the property by the trust to petitioner for $86,900. No such proof was presented. The real focal point of petitioners' argument is stated in their brief as follows: It is a firmly established rule of law that the transfer by the trustee of trust property out of the trust to or for the trustee's own benefit creates an obligation and indebtedness by the trustee to pay the trust an amount equal to the property transferred, citing only Norman's Ex'x. v. Cunningham & Wife et als.,supra, in support of that point. Having finally traced down a report of that old Virginia case, we find that it does not support petitioners' theory in the context for which it is cited. That case does hold that if a fiduciary does convert property of an estate or trust, in which beneficiaries have valid interests, to himself or for his benefit, the beneficiaries have a number of remedies, including obtaining compensation from the trustee if the property itself cannot be recovered. This is standard hornbook law with respect to fiduciaries. See III Scott, Trusts secs. 199.3, 205, and 207 (3d ed. 1967), *622 Bogert, Trusts and Trustees, sec. 861, p. 26 (2d Rev. Ed. 1982). But the transfer of trust assets to the trustee or for his benefit does not automatically create an obligation or indebtedness in the trustee to pay to the trust an amount equal to the value of the property transferred, as petitioners required to support their argument. If petitioner wrongfully converted the trust property, which petitioners do not admit, the beneficiaries would have a cause of action against him to restore them, in one way or another, to the position they were in before the transfer, but it would have been their election to pursue whichever remedy they chose. They might have sought revocation of the transaction and recovery of the property (Second Lafayette could hardly be considered a bona fide purchaser without notice), or shares of stock or other compensation from Second Lafayette, or compensation from petitioner. [8] But until that election was made, we cannot find that petitioner was so obligated or indebted to the trust as to give him an increased basis in his stock of Second Lafayette. At most petitioner may have had a contingent obligation to the trust, but that is not enough to increase his *623 basis in the stock. Columbus & Greenville Railway Co. v. Commissioner,42 T.C. 834 (1964), affd. per curiam 358 F.2d 294 (5th Cir. 1966). Furthermore, there is no evidence that the property was transferred for the benefit of petitioner. Petitioner was the sole stockholder of Second Lafayette, all of which stock he gave to Myra in 1976, but there is no evidence whether Second Lafayette recognized any sort of obligation to the trust in exchange for the property. Eight years had passed since the date of the transfer and the date this case was submitted to this Court and there was no evidence to indicate that petitioner had ever recognized that he had any obligation to the trust or that the trust acknowledged that it had a gain on the sale of the property to either petitioner or Second Lafayette. We do not believe that petitioner can walk with water on both shoulders, waiting for the ax to fall before committing himself to a specific characterization of the transaction for tax purposes. Interlochen Co. v. Commissioner,232 F.2d 823 (4th Cir. 1956), *624 affg. 24 T.C. 1000 (1955). This transaction was between, at the most, three parties, the trust, Second Lafayette, and petitioner, all of whom were controlled by petitioner. Under such circumstances, if the parties intend the transaction to be characterized other than what it appears to be, they must have substantial evidence to support their characterization. See e.g., Maletis v. United States,200 F.2d 97 (9th Cir. 1952). The most plausible of all theories, in our view, assuming the transfer was made for petitioner's personal benefit, is that the trust made a gift to petitioner, with the consent of all the beneficiaries. The property had a basis of $6,631.24 in the hands of the trust and therefore, pursuant to section 1015(a), it would have the same basis in the hands of petitioner. Upon the transfer of the property to Second Lafayette, petitioner's basis in his stock would be increased by the same amount pursuant to section 358(a)(1). However, petitioners did not so argue and since they have they have the burden of proving error in respondent's determination, we will not give consideration to this theory. In view of the evidence, we cannot say that respondent erred in denying *625 petitioner any increase in the basis of his stock in Second Lafayette as a result of the transfer of the 39th St. property. Consequently, petitioners were limited to a $2,000 deduction for the net operating loss of Second Lafayette. Respondent's adjustments for 1976 were automatic and are approved. Decision will be entered for the respondent.
Footnotes
1. The deficiency for 1976 resulted from the adjustments to petitioners' income for 1975 used in computing petitioners' income tax for 1976, using the income-averaging method.↩
2. Petitioners stipulated that on Sept. 14, 1969, they entered into an agreement with respondent which fixed the basis of this property at $6,631.24 for Federal income tax purposes.↩
3. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue.↩
4. SEC. 1374. CORPORATION NET OPERATING LOSS ALLOWED TO SHAREHOLDERS. (a) General Rule.--A net operating loss of an electing small business corporation for any taxable year shall be allowed as a deduction from gross income of the shareholders of such corporation in the manner and to the extent set forth in this section. (b) Allowance of Deduction.--Each person who is a shareholder of an electing small business corporation at any time during a taxable year of the corporation in which it has a net operating loss shall be allowed as a deduction from gross income, for his taxable year in which or with which the taxable year of the corporation ends (or for the final taxable year of a shareholder who dies before the end of the corporation's taxable year), an amount equal to his portion of the corporation's net operating loss (as determined under subsection (c)). The deduction allowed by this subsection shall, for purposes of this chapter, be considered as a deduction attributable to a trade or business carried on by the shareholder. (c) Determination of Shareholder's Portion.-- (2) Limitation.--A shareholder's portion of the net operating loss of an electing small business corporation for any taxable year shall not exceed the sum of-- (A) the adjusted basis (determined without regard to any adjustment under section 1376 for the taxable year) of the shareholder's stock in the electing small business corporation, determined as of the close of the taxable year of the corporation, (or, in respect of stock sold or otherwise disposed of during such taxable year, as of the day before the day of such sale or other disposition), * * *↩
5. SEC. 358. BASIS TO DISTRIBUTEES. (a) General Rule.--In the case of an exchange to which section 351 * * * applies-- (1) Nonrecognition property.--The basis of the property permitted to be received under such section without the recognition of gain or loss shall be the same as that of the property exchanged--↩
6. Kenneth and Myra Seay, as trustees of the trust, were the named grantors in the deed. ↩
7. Petitioners' 1974 tax return was not placed in evidence, so we assume it did not report a sale of the 39th St. property either.↩
8. Even the amount of compensation might be uncertain, as indicated in Norman's Ex'x. v. Cunningham & Wife et als.,↩ 5 Gratt. (46 Va.) 63 (1848), discussed above.