**Frank A. DeLORENZO,**
**Plaintiff-Appellee,**

v.

**UNITED STATES of America,**
**Defendant-Appellant.**

No. 605, Docket 76–6153.

United States Court of Appeals,
Second Circuit.

Argued April 11, 1977.

Decided May 6, 1977.

Davis M. Etkin, Schenectady, N. Y. (Etkin & Stark, Schenectady, N. Y.), for plaintiff-appellee.

John G. Manning, Atty., Tax Div., Dept. of Justice, Washington, D. C. (Myron C. Baum, Acting Asst. Atty. Gen., Gilbert E. Andrews, Richard W. Perkins, Tax Div., Dept. of Justice, Washington, D. C., James M. Sullivan, U. S. Atty., of counsel), for defendant-appellant.

\* Tom C. Clark, Associate Justice, United States Supreme Court, Retired, sitting by designation.

Before CLARK, Associate Justice,\* and ANDERSON and MULLIGAN, Circuit Judges.

MULLIGAN, Circuit Judge:

Frank A. DeLorenzo filed a complaint in the United States District Court for the Northern District of New York seeking a refund of $599.01 paid in partial satisfaction of assessments of federal wagering excise taxes, penalties and interest totaling $14,-734.92. The Government filed a counterclaim for $10,746.89, the unpaid balance alleged to be due and owing. The action was tried before Hon. James T. Foley, Chief Judge of the Northern District on May 21, 1975. Pursuant to a memorandum decision of July 9, 1976, judgment was entered on the same date dismissing the taxpayer's complaint and granting judgment for the Government on its counterclaim in the amount of $2,801.44. This appeal by the Government followed. We reverse the judgment of the district court and remand with instructions to enter judgment for the United States on its counterclaim for the full amount sought.

DeLorenzo was suspected by the New York State Police of engaging in illegal gambling activities in Schenectady, New York where he operated a men's clothing store. He was under surveillance from August 1, 1967 until September 26, 1967 and was observed personally about two out of three days during that period. He was arrested on criminal gambling charges on October 4, 1967 and an envelope in his possession containing cash and betting slips was seized. His store was raided the same day and one of his employees was arrested on similar charges. A quantity of betting slips with wagers recorded on them was also seized. An Internal Revenue agent learning of the raid through the local press commenced an investigation of DeLorenzo's liability for federal excise taxes on wagers. At the time of these events 26 U.S.C. § 4401 imposed a 10 percent tax on wagers.[1] The

1. The version of 26 U.S.C. § 4401 applicable here provided:

computation of DeLorenzo's taxes presents the only issue on this appeal.

■ The Government determined the tax by estimating DeLorenzo's wagers from August 1, 1967 to October 4, 1967 to be in the sum of $111,815.26. This calculation was made by multiplying the amount of wagers recorded on the day of his arrest by the number of working days (56) between the commencement of surveillance and the arrest date. This is an admittedly crude determination of how much DeLorenzo owes the United States because of his clandestine sporting proclivities. However, precise calibration of the amount of wagers placed in these circumstances is not feasible. The Internal Revenue Code places the responsibility for maintaining accurate records of the gross amount of wagers received on the person who is liable for the tax. 26 U.S.C. § 4403.[2] DeLorenzo admittedly kept no such records and he is obviously not in a position to complain about the uncertainty of his receipts and the taxes he must pay.

■ Where no records are kept the Commissioner of Internal Revenue is authorized to make an estimate by any reasonable method. *Hamilton v. United States*, 309 F.Supp. 468, 472–73 (S.D.N.Y.1969), aff'd, 429 F.2d 427 (2d Cir. 1970), cert. denied, 401 U.S. 913, 91 S.Ct. 881, 27 L.Ed.2d 812 (1971); *United States v. Firtel*, 446 F.2d 1005, 1006–07 (5th Cir. 1971). The taxpayer in a refund suit bears the burden of proving not merely that the Commissioner's calculation is erroneous but also the amount he is entitled to recover. *United States v. Janis*, 428 U.S. 433, 440, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976); *Lewis v. Reynolds*, 284 U.S.

281, 283, 52 S.Ct. 145, 76 L.Ed. 293 (1932). This burden remains with the taxpayer even though a civil collection suit is brought by the Government, in this case by its counterclaim. *Lesser v. United States*, 368 F.2d 306, 310 (2d Cir. 1966) (en banc).[3]

■ Here the taxpayer claimed that use of the multiplier 56 to arrive at gross wagers received was unfair and improper since he was not observed taking wagers during the entire 56-day period. A reading of the record discloses that in any event the district court's finding that DeLorenzo was observed taking bets one-third of the time between August 1, 1967 and September 26, 1967 was clearly erroneous. The undercover investigator's testimony was that he had *failed* to observe the taxpayer taking bets one-third of the time in the period in question. More importantly the taxpayer's own testimony was as follows:

Q. It is your testimony that every day—every work day from August 1 to October 4 you took bets, you were engaged in the gambling business?

A. I would say five or six days a week, yes.

On the basis of this admission, the conclusion of the court below that the 56-day figure "was not shown to be rationally based on any fact recited during this hearing" must be set aside. The taxpayer here has kept no records and has admitted to full-time devotion to his vocational or avocational activities as a bookie. The only rational estimate of his total income must therefore be based on those records seized on October 4, 1967 when he and his employee were arrested. While he argues that his

---

(a) Wagers.—There shall be imposed on wagers, as defined in section 4421, an excise tax equal to 10 percent of the amount thereof.

A subsequent amendment reduced the tax to 2 percent. Act of October 29, 1974, Pub.L.No. 93–499, § 3(a), 88 Stat. 1550.

2. § 4403. Record requirements

Each person liable for tax under this subchapter shall keep a daily record showing the gross amount of all wagers on which he is so liable, in addition to all other records required pursuant to section 6001(a).

3. Concerning the propriety of imposing the burden of proof on the taxpayer in a collection suit as well as in a refund suit, the Court has recently observed:

The policy behind the presumption of correctness and the burden of proof . . . would appear to be applicable in each situation.

*United States v. Janis, supra*, 428 U.S. at 440, 96 S.Ct. at 3025 (citation omitted).

**30**

receipts were high on this day because of the World Series, he has not proffered any evidence of normal receipts. On this record we must reverse the judgment below and remand to the district court with instructions to enter judgment for the United States on its counterclaim making due allowance for payments already received. The moral seems to be that those engaged in this activity should either keep records or at least refrain from initiating civil suits for refunds.