**Ross J. DiMAURO, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 82–1485.**

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 14, 1983.

Decided May 24, 1983.

---

Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Jonathan Cohen, Laurie A. Snyder, Attys., Tax Div., Dept. of Justice, Washington, D.C., for appellee; Ronald D. Lahners, U.S. Atty., Omaha, Neb., of counsel.

John J. Higgins, Higgins & Okun, Omaha, Neb., for appellant.

Before BRIGHT, ARNOLD and JOHN R. GIBSON, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Ross J. DiMauro appeals from the judgment of the district court[1] which ruled against him on his claim for refund and in favor of the United States on the government's counterclaim to recover the unpaid portion of tax assessments arising from DiMauro's gambling activities. DiMauro claims (1) that the assessments were without factual foundation and (2) that the assessments were erroneous because the government's methods of calculating his tax liability were unreasonable. We affirm.

DiMauro's complaint sought a refund of $591.14 paid in partial satisfaction of assessments of federal excise and occupational taxes on wagering, together with penalties and interest. The government's counterclaim sought to recover $232,014.13, the unpaid balance of assessments against DiMauro for the period March 1970 through December 1974. The district court upheld assessments for the period March 1970 through December 1973, but disallowed assessments for the year 1974 and disallowed assessments for fraud penalties. The court entered judgment in favor of the United States in the amount of $211,937.67.

At the time of trial,[2] DiMauro had been engaged as a bookmaker "off and on" for twenty years. He accepted wagers on baseball, football, and basketball games, and on horse races. DiMauro conducted his business principally by telephone and accepted only cash wagers from his customers. In 1970 and 1971, he employed an assistant to run errands, including picking up envelopes of cash. From 1970 to 1973, DiMauro's sole source of income was gambling.

DiMauro filed Form 730, Tax on Wagering, monthly for January, February, April, May and June of 1970 and admitted that he was engaged in wagering activities during those months. DiMauro did not file Form 730 for March or for the latter half of 1970. William D. Burnham testified in a deposition, however, that he placed bets with DiMauro on various sporting events every week in 1970.

In 1971, DiMauro filed Form 730 monthly for the latter half of the year, July through December, and admitted that he was bookmaking during that period. DiMauro denied that he "booked" during the first six months of 1971. Burnham, however, testified that he continued to place weekly bets with DiMauro during all of 1971.

An IRS Agent conducted an investigation of DiMauro's liability for federal excise[3] and occupational[4] taxes on wagers for the

---

1. The Honorable C. Arlen Beam, United States District Judge for the District of Nebraska, entered judgment pursuant to the memorandum opinion by the Hon. Warren K. Urbom, Chief Judge, United States District Court for the District of Nebraska.

2. The Honorable Robert V. Denney presided at the trial. His death intervened and the case was assigned to Judge Urbom.

3. The government does not appeal from the district court's rejection of assessments for 1974 and of fraud assessments. For the years 1970 through 1973, the Internal Revenue Code, 26 U.S.C. § 4401, imposed a ten percent excise tax on wagers. A subsequent amendment reduced the tax to two percent. Act of October 29, 1974, Pub.L. No. 93–499, § 3(a), 88 Stat. 1550. *See also* Act of October 25, 1982, Pub.L. No. 97–362, Title I, § 109(a), 96 Stat. 1731.

4. During the relevant period, 26 U.S.C. § 4411 imposed an annual occupational tax of $50 upon those liable under § 4401. A subsequent amendment increased the tax to $500. Act of October 29, 1974, Pub.L. No. 93–499, § 3(b), 88 Stat. 1550.

years 1970 through 1974. The investigation resulted in the assessments now in question.

■ It has long been recognized in tax cases that an assessment is presumed to be correct. *Welch v. Helvering,* 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933). Before the government can rely on the presumption in a wagering excise tax case, however, it must present some evidence connecting the taxpayer with wagering activity during the time period covered by the assessment. *Carson v. United States,* 560 F.2d 693 (5th Cir.1977); *DeLorenzo v. United States,* 555 F.2d 27 (2d Cir.1977); *Gerardo v. Commissioner,* 552 F.2d 549 (3d Cir. 1977). Once this minimal showing is made, the taxpayer bears the burden of proving by a preponderance of the evidence that the assessment was erroneous in some respect. *United States v. Pomponio,* 635 F.2d 293, 297, n. 4 (4th Cir.1980); *Sullivan v. United States,* 618 F.2d 1001, 1008–09 (3d Cir. 1980).[5]

DiMauro argues (1) that there was no evidence connecting him with wagering activities, particularly in 1970 and 1971; and (2) that the assessments were erroneous be-

cause the government used improper methods of calculating his tax liability.

■ We disagree with DiMauro's contention that the government's assessments lacked a factual foundation. The government's obligation is merely to offer "some evidence . . . which would support an inference of the taxpayer's involvement in [wagering] activity during the time period covered by the assessment." *Gerardo v. Commissioner, supra,* 552 F.2d at 554. DiMauro contends that the government has not shown that he was engaged in wagering activities for the month of March 1970, the latter half of 1970, and the first half of 1971.[6] However, one of DiMauro's "customers," William D. Burnham, testified unequivocally in a deposition[7] that he placed bets with DiMauro every week in 1970 and 1971. DiMauro argues that the deposition is entitled to no weight since it was given ten years after the events took place and since Burnham lacked credibility and admitted in the deposition that he had no independent recollection of the amounts wagered. The government, however, need not prove the amounts wagered in order to establish a factual foundation for its assess-

---

5. When the government attempts to collect a tax by way of a counterclaim in district court, as in this case, the circuits are split over the burden of proof allocation once the taxpayer has proved the assessment erroneous. *United States v. Janis,* 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976) (no attempt to resolve split). *Compare DeLorenzo v. United States,* 555 F.2d 27, 29 (2d Cir.1977) and *United States v. Rexach,* 482 F.2d 10, 16–17 (1st Cir.), cert. denied, 414 U.S. 1039, 94 S.Ct. 540, 38 L.Ed.2d 330 (1973) (taxpayer not only bears the burden of proving that the assessment was erroneous, but also must prove the correct amount of taxes owed) with *Higginbotham v. United States,* 556 F.2d 1173, 1175 (4th Cir.1977) and *Carson v. United States,* 560 F.2d 693, 696 (5th Cir.1977) (taxpayer bears only the burden of proving the assessment erroneous; the burden then shifts to the government to prove the correct amount of taxes owed). We do not reach the issue because DiMauro has failed to prove the assessments erroneous.

6. DiMauro's argument that the assessments for 1972 and 1973 were without factual foundation is vague and not fully developed, but insofar as this is an attempt to argue that the evidence was insufficient to link him with bookmaking in those later years, it is wholly without merit.

On September 16, 1972, DiMauro was arrested for bookmaking. During a search of DiMauro's house, two Omaha police officers spent fifteen to thirty minutes answering two of DiMauro's telephones. Although some callers hung up immediately, the officers accepted bets totaling over $1600. In addition, the police found betting slips and racing forms in the house. DiMauro was convicted of providing facilities for gambling based on his activities in September. Despite this conviction, DiMauro's bookmaking activities continued. DiMauro admits that, in the spring of 1973, he was bookmaking and that this activity resulted in his conviction in June 1973 of keeping a gambling room. On September 17, 1973, DiMauro was again convicted of keeping a gambling room; this time based on his wagering activity in August 1973. DiMauro also admits that he was bookmaking in September, October and November 1973. An FBI wiretap of DiMauro's telephone from November 11 to November 21, 1973 revealed that he was engaged in wagering activity.

7. The deposition was admitted under the former testimony exception to the hearsay rule. Fed.R.Evid. 804(b)(1).

ments.[8]  Moreover, questions concerning credibility and the weight to be given to the evidence are for the district court to decide. Burnham's deposition was substantive evidence[9] that DiMauro was engaged in wagering.  The district court finding that the government showed some link between DiMauro and wagering activities during all of 1970 and 1971 is not clearly erroneous.  The presumption of correctness therefore attaches to that portion of the assessments covering those periods.

■ DiMauro also contends that the assessments were erroneous due to the government's allegedly improper methods of calculating tax liability.  DiMauro primarily complains about the use of an affidavit which the government obtained from Burnham.  After a series of interviews with a revenue agent in 1975, Burnham signed an affidavit which set out in detail the average amount of wagers he placed with DiMauro from March 1970 to October 1971.  The district court ruled that the affidavit was inadmissible to show the exact amounts wagered, but relied in part on the affidavit in its determination that the methods of assessment employed by the IRS were reasonable.  DiMauro criticizes the apparent inconsistency by stating, "If the affidavit is not admissible to show the amounts allegedly wagered with DiMauro then the assessment for 1970 and 1971 has no basis."  Even though the affidavit may have been inadmissible to prove the assertions contained therein, the amounts wagered, it was admissible and could be considered for the limited purpose of determining whether the Commissioner's reconstruction of gross wagers rested on a reasonable basis.  *Avery v. Commissioner,* 574 F.2d 467 (9th Cir.1978).  *See also* 9 J. Mertens, *Law of Federal Income Taxation,* § 50.61, at p.

196 (1977) ("The Commissioner is not required to make his determination on the basis of evidence legally admissible in a formal proceeding in court.")

To verify the information contained in the affidavit, the revenue agent interviewed a bank official to confirm that Burnham had borrowed money to pay a gambling debt owed to DiMauro.  The agent also interviewed an individual who worked for DiMauro in his bookmaking operation and about one hundred bettors in the Omaha area.  The court specifically found the government's reliance on Burnham's affidavit to be reasonable.  DiMauro offered only his own uncorroborated testimony to refute the information contained in Burnham's affidavit.  *Cf. Griffin v. United States,* 588 F.2d 521, 530 (5th Cir.1979) (taxpayer's uncorroborated testimony is generally insufficient to meet burden of proof).

■ DiMauro similarly complains about the court's treatment of the "profit factor method" of calculating tax liability, which was utilized for the years 1972 and 1973.  The court ruled that the method was a reasonable method for making the excise tax assessments, but that it was inadequate, in this case, to prove fraud.  DiMauro admitted that he destroyed all records of his wagering activity in order to avoid arrest for illegal gambling.  For obvious reasons, when a taxpayer destroys his tax records, the Commissioner's assessment of tax liability need not be arithmetically precise.  *Webb v. Commissioner,* 394 F.2d 366, 373 (5th Cir.1968).  The Commissioner's method need only be reasonable.  *DeLorenzo v. United States, supra,* 555 F.2d at 29.  The accuracy of the calculations may well be sufficient to satisfy the reasonableness standard while being insufficient to establish fraud.

**8.** This contrasts with the government's burden in proving fraud.  The government in this case attempted to show, as an indicia of fraud, a persistent pattern of substantially understating tax liability.  The government had the burden ·of proving this by clear and convincing evidence.  *Camien v. Commissioner,* 420 F.2d 283, 287 (8th Cir.1970).  The district court ruled that the government failed to satisfy its burden,

especially since Burnham's affidavit was not admissible to show the amounts wagered.  *See* discussion *infra.*

**9.**  *Cf. Llorente v. Commissioner,* 649 F.2d 152 (2d Cir.1981) (no link shown between taxpayer and tax-generating activity, unidentified informant's story inadmissible to establish truth of facts asserted).

The district court found that the government satisfied its burden of showing some link between DiMauro and wagering activity during the years in question. The court also found that DiMauro failed to prove that the government's methods of calculating the amount of wagers placed with Di-Mauro were unreasonable or that the amount calculated was erroneous. We conclude that these findings are not clearly erroneous. The district court scrupulously avoided using the affidavit for an improper purpose.

The judgment of the district court is affirmed.

Wallace, Circuit Judge, filed a concurring and dissenting opinion.