MARTIN VICTOR SELLERS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sellers v. Commissioner
Docket No. 8972-90
United States Tax Court
T.C. Memo 1993-330; 1993 Tax Ct. Memo LEXIS 330; 66 T.C.M. (CCH) 239; July 26, 1993, Filed *330 Decision will be entered under Rule 155. Martin Victor Sellers, pro se. For respondent: Loren B. Mark. CHIECHI
CHIECHI
MEMORANDUM FINDINGS OF FACT AND OPINION CHIECHI, Judge: By notice of deficiency mailed to petitioner on February 16, 1990, respondent determined the following deficiencies in, and additions to, petitioner's Federal income tax: Deficiencies in Tax
Year
Deficiency
1983
$ 16,437
1984
14,627
1985
13,360
1986
13,686
1987
12,610
Additions to Tax
Section
Section
Section
Section
Year
6653(a)(1) [1]
6653(a)(2) 6653(a)(1)(A)
6653(a)(1)(B)
1983
$ 822
*  $ --
$ --
1984
731
*  --
--
1985
668
*  --
--
1986
--
--
684
*  1987
--
--
643
*  Section
Section
Section
Year
6651(a)
6654 6661 1983
$ -- $ 931
$ 4,109
1984
-- 844
3,657
1985
3,340
765
3,340
1986
-- 607
3,422
1987
1,133
656
3,153
*331 The issues for decision are: (1) Did petitioner understate his taxable income for each of the years 1983 through 1987? We hold that he did. (2) Is petitioner liable for the additions to tax for negligence for each of the years 1983 through 1987? We hold that he is. (3) Is petitioner liable for the addition to tax for failure to file for the years 1985 and 1987? We hold that he is. (4) Is petitioner liable for the addition to tax for failure to pay estimated tax for each of the years 1983 through 1987? We hold that he is. (5) Is petitioner liable for the addition to tax for substantial understatement of income tax for each of the years 1983, 1984, 1986, and 1987? [2] We hold that he is. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioner resided in North Platte, Nebraska, at the time of the filing of the petition herein. Petitioner timely filed *332 individual Federal income tax returns for 1983, 1984, and 1986. On May 25, 1988, petitioner filed an individual Federal income tax return for 1987, which was after the due date for such return. Petitioner did not file an income tax return for 1985. Petitioner's filing status for 1983, 1984, and 1985 was single. His filing status for 1986 and 1987 was head of household. The deficiency determinations set forth in the notice of deficiency were based primarily on income derived by petitioner from the sale of marijuana during the years at issue. In addition to the unreported income from illegal drug sales, respondent also determined unreported unemployment compensation for 1983 and 1986 in the amounts of $ 2,097 and $ 100, respectively. In late 1986 or early 1987, petitioner was brought to the attention of certain law enforcement officials in the State of Nebraska as a possible dealer of drugs in the area of North Platte, Nebraska. James Parish (Parish), who was at the time of trial a lieutenant with the Nebraska State Patrol (State Patrol), first became aware of petitioner in the spring of 1987. Parish had been with the State Patrol for almost 16 years at the time of trial and *333 had been involved in several hundred drug investigations. Throughout his career, Parish's duties with the State Patrol included involvement with and supervision of narcotics investigations. Sometime during 1987, petitioner's residence was put under surveillance. Such surveillance disclosed a large number of individuals entering and leaving the residence. Many of these individuals were known by Parish and others in the Narcotics Division of the State Patrol to be involved in the use of illegal drugs. Lonnie McDonald (McDonald), who at the time of trial had been employed as an investigator with the Sheriff's Department of Lincoln County, Nebraska (Sheriff's Department), first became aware of petitioner in either late 1986 or early 1987 through police and intelligence reports and through interviews with individuals who either had been arrested or were being interviewed for drug-related offenses. McDonald's duties with the Sheriff's Department had included drug investigations. As of 1987, he had been involved in approximately 50 such investigations. Sometime around December 23, 1987, McDonald decided to try to obtain a search warrant for petitioner's residence. The warrant was *334 obtained and was served on December 23, 1987, with the assistance of Parish, since it was standard procedure of the Sheriff's Department to work with the State Patrol on such matters. The search of petitioner's residence was conducted on December 23, 1987, by McDonald, Parish, and two or three officers from the Sheriff's Department. Approximately four pounds of marijuana were seized during this search. In addition, other items were seized, including drug paraphernalia, a shotgun, which was legally owned and later returned, and a scale which appeared to McDonald to be used for weighing marijuana. Although petitioner was not present during the search of his residence, he telephoned his residence during that time and spoke with Parish. Petitioner agreed to meet with Parish at his office at the State Patrol. Therefore, Parish left the search site and returned to his office to meet with petitioner while the other law enforcement officers completed the search. After petitioner arrived at Parish's office, Parish informed him that a search warrant for his residence had been issued and that a quantity of marijuana had been found there during the course of the search. Before asking *335 petitioner a number of questions about his involvement with marijuana, Parish made it clear to petitioner that he was not obligated to talk with Parish and was free to leave at any time. During Parish's interview of petitioner on December 23, 1987 (December 23 interview), petitioner admitted that the four pounds of marijuana seized at his residence were his marijuana. When asked during the December 23 interview about his involvement in the sale of marijuana, petitioner admitted that he had been dealing in marijuana over the past four to five years (i.e., over the period 1983 through 1987). Petitioner told Parish that he had one or more suppliers from whom he purchased four to six pounds of marijuana every two to three days at a cost of $ 850 per pound. Petitioner further indicated to Parish that he sold the marijuana he purchased for $ 250 per quarter pound. Petitioner also admitted that he sometimes bought as much as ten pounds of marijuana at one time, provided that he had already locked in a sale of at least five of those pounds. While Parish was interviewing petitioner, McDonald arrived from the search site. Parish then summarized for McDonald what petitioner had thus far *336 disclosed to him. McDonald then joined Parish, and they both asked petitioner questions about his involvement with marijuana. Petitioner restated for both Parish and McDonald what he had already admitted to Parish. Based on the information provided by petitioner during the December 23 interview about his drug-dealing activities over the period 1983 through 1987, Parish calculated petitioner's annual profit from marijuana sales to be $ 39,000. This calculation assumed that, each week throughout the year, petitioner purchased five pounds of marijuana for $ 850 per pound and sold five pounds of marijuana for $ 250 per quarter pound, thereby resulting in a $ 750 per week or $ 39,000 per year profit to petitioner. During the December 23 interview, Parish reviewed his calculation of petitioner's annual profit from marijuana sales several times with petitioner. During that review, petitioner repeatedly indicated that Parish's calculation of his annual income from marijuana sales was probably correct. Sometime after Parish and McDonald completed the December 23 interview, petitioner was charged with the following violations: (1) possession with intent to sell -- marijuana, (2) possession *337 of more than one pound of marijuana, (3) possession of drug paraphernalia, and (4) possession of a destructive device. On July 12, 1988, petitioner entered a plea of guilty to one count of possession with intent to sell marijuana and one count of possession of over one pound of marijuana. Based on this guilty plea, the District Court for the County of Lincoln, Nebraska, entered an order on July 12, 1988, which determined that petitioner was guilty of those two possession charges. On October 25, 1988, petitioner was sentenced by that Court to the Nebraska Penal and Correctional Complex for two concurrent terms of one to three years on those two convictions. A revenue agent (agent) was assigned to examine petitioner's income tax liabilities for each of the years 1983 through 1987. The agent met with petitioner and requested information and records for each of those years. Petitioner did not have any records regarding his income or expenses for those years. In the absence of adequate records, the agent determined petitioner's unreported marijuana sales income for the years 1983 through 1987 based on the admissions which petitioner made to Parish and McDonald during the December *338 23 interview and which they related to the agent. In addition to using petitioner's admissions to Parish and McDonald in determining his unreported marijuana sales income for the years 1983 through 1987, the agent did an evaluation of the minimal income that petitioner would have needed during each of those years based on Bureau of Labor Statistics (BLS). For each of the years 1983, 1984, 1985, 1986, and 1987, the BLS requisite minimal income was substantially higher than the income reported by petitioner. [3]
OPINION Unreported Income
Before turning to whether petitioner had unreported income for each of the years 1983 through 1987, which was derived principally from marijuana sales, we will address a preliminary matter. At trial, petitioner asserted that respondent's entire case was based upon hearsay. [4] Although it is not altogether clear, it appears that petitioner may be, and we shall assume he is, contending that respondent's notice of deficiency was without *339 foundation and was therefore arbitrary. As a general rule, a presumption of correctness attaches to a notice of deficiency, which places upon a taxpayer the burden of proof and the burden of going forward with the evidence to show the correct amount of his or her income. Welch v. Helvering, 290 U.S. 111, 115, 78 L. Ed. 212, 54 S. Ct. 8 (1933); Rule 142(a). However, if the taxpayer shows that the notice of deficiency is arbitrary (e.g., without factual foundation or rational basis), the burden of going forward with the evidence shifts to respondent. Helvering v. Taylor, 293 U.S. 507, 514-515, 79 L. Ed. 623, 55 S. Ct. 287 (1935); Day v. Commissioner, 975 F.2d 534, 537 (8th Cir. 1992), affg. in part, revg. in part, and remanding T.C. Memo 1991-140; Gerardo v. Commissioner, 552 F.2d 549, 552-553 (3d Cir. 1977), affg. in part, revg. in part, and remanding T.C. Memo 1975-341. *340 See DiMauro v. United States, 706 F.2d 882, 884 (8th Cir. 1983). In asking this Court to conclude that the notice of deficiency is arbitrary, petitioner is requesting the Court to look behind the notice. This Court generally will not go behind a notice of deficiency to examine the evidence used by respondent in making her determination. Shriver v. Commissioner, 85 T.C. 1, 3 (1985), affd. by unpublished order (7th Cir., Oct. 3, 1986); Dellacroce v. Commissioner, 83 T.C. 269, 280 (1984). We have looked behind the notice of deficiency in those rare instances involving illegal unreported income where the Commissioner introduced no substantive evidence, but rested solely on the presumption of correctness, and the taxpayer challenged the notice of deficiency as arbitrary. Dellacroce v. Commissioner, supra; Jackson v. Commissioner, 73 T.C. 394, 401 (1979). Thus, in situations, such as the case here, where the deficiency determination is based upon unreported illegal income and the taxpayer challenges the notice of deficiency *341 as arbitrary, respondent has the burden of coming forward with some substantive evidence which links the taxpayer to the illegal tax-generating activity. Day v. Commissioner, supra; Shriver v. Commissioner, supra at 3-4; Dellacroce v. Commissioner, supra at 280, 283; Jackson v. Commissioner, supra.See DiMauro v. United States, supra.
In the present case, respondent introduced substantive evidence to link petitioner to the illegal marijuana sales on which the deficiency determinations were made. Respondent did not rest solely on the presumption of correctness which generally attaches to the notice of deficiency. Accordingly, based on the evidence presented, we hold that this is not an appropriate case in which to look behind the notice. Respondent called as witnesses Parish and McDonald, two law enforcement officers who executed a search of petitioner's residence on December 23, 1987, and who interviewed petitioner on the day of the search. We found each to be a credible witness. Each testified about the *342 search of petitioner's residence, which yielded, among other items, four pounds of marijuana and drug paraphernalia. Each also testified about the December 23 interview of petitioner. Before conducting that interview, Parish made clear to petitioner that he was not obligated to speak with Parish and that he was free to leave at any time. During the December 23 interview, petitioner admitted to Parish and also to McDonald, who joined Parish and petitioner after the interview began, that he had been dealing in marijuana for four to five years, that is to say, from 1983 through 1987. Petitioner also admitted during the December 23 interview that he purchased between four to six pounds of marijuana every two to three days at a cost of $ 850 per pound. He further admitted that he sold the marijuana which he purchased for $ 250 per quarter pound. Based on the information provided by petitioner during the December 23 interview about his drug-dealing activities over the period 1983 through 1987, Parish calculated petitioner's annual profit from marijuana sales to be $ 39,000 per year. In making this calculation, Parish assumed, based upon what petitioner had admitted to him, that, *343 each week throughout the year, petitioner purchased five pounds of marijuana for $ 850 per pound and sold five pounds of marijuana for $ 250 per quarter pound. This resulted in a $ 750 per week or $ 39,000 per year profit to petitioner from the sale of marijuana. The calculation performed by Parish was shown to petitioner during the December 23 interview, at which time petitioner repeatedly advised Parish that Parish's calculation of petitioner's annual income from marijuana sales was probably correct. The testimony of both Parish and McDonald relating petitioner's admissions to them is substantive evidence linking petitioner to marijuana sales during the period 1983 through 1987. [5] Respondent relied on those admissions in making her deficiency determinations against petitioner for the years at issue. Petitioner's admissions to Parish and McDonald are not hearsay. Fed. R. Evid. 801(d)(2). Although petitioner denied at trial that he made the admissions to which both Parish and McDonald testified, we are not required to, and do not, accept his self-serving testimony, particularly in the absence of corroborating evidence. See DiMauro v. United States, 706 F.2d at 885; *344 Griffin v. United States, 588 F.2d 521, 530 (5th Cir. 1979); Geiger v. Commissioner, 440 F.2d 688, 689 (9th Cir. 1971), affg. per curiam T.C. Memo 1969-159. We find petitioner's admissions to Parish and McDonald, which were made voluntarily, more trustworthy than his self-serving testimony at the trial of this case. We thus reject petitioner's contention that the notice of deficiency was without factual foundation and was therefore arbitrary. We hold that the evidence presented by respondent is sufficient for petitioner to retain the burden of proving the incorrectness of the deficiency determinations. See DiMauro v. United States, 706 F.2d at 884-885; *345 Petzoldt v. Commissioner, 92 T.C. 661, 691 (1989); Shriver v. Commissioner, 85 T.C. at 4. Having decided that the notice of deficiency in this case is presumed correct, we will now turn to whether petitioner had unreported income in the amounts determined by respondent from the sale of marijuana for each of the years 1983 through 1987. Petitioner failed to provide any books, records, or other evidence relating to his marijuana sales. Therefore, respondent calculated petitioner's income from marijuana sales for each of those years based upon available evidence. Respondent principally relied upon the admissions made by petitioner to Parish and McDonald during the December 23 interview about his activities in buying and selling marijuana over the four-to-five-year period, starting in 1983. [6] Respondent's reliance on petitioner's admissions in calculating his marijuana sales, the cost basis for such marijuana, and the income amounts for each of the years 1983 through 1987 was reasonable and proper. See Holland v. United States, 348 U.S. 121, 132, 99 L. Ed. 150, 75 S. Ct. 127 (1954); Day v. Commissioner, 975 F.2d at 538; *346 Jones v. Commissioner, 903 F.2d 1301, 1303 (10th Cir. 1990), affg. in part, revg. in part, and remanding T.C. Memo 1988-373. When a taxpayer has no tax records, the Commissioner's determination of his tax liability need not be arithmetically correct. DiMauro v. United States, 706 F.2d at 885; Webb v. Commissioner, 394 F.2d 366, 373 (5th Cir. 1968), affg. T.C. Memo 1966-81. The Commissioner's method need only be reasonable. Day v. Commissioner, supra; DiMauro v. United States, supra; DeLorenzo v. United States, 555 F.2d 27 (2d Cir. 1977). *347 If anything, the calculation of petitioner's annual profit for each of the years 1983 through 1987 was conservative in relation to petitioner's admissions that he was buying and selling during those years between four and six pounds of marijuana every two to three days. The evidence of petitioner's participation in illegal marijuana sales consisting of admissions voluntarily made by him to Parish and McDonald during the December 23 interview contradicts and outweighs his testimony at trial that he did not engage in any such sales. Simply stated, petitioner has not presented any credible evidence which refutes respondent's deficiency determinations. Accordingly, we sustain respondent's determination that petitioner had income from marijuana sales in the amount of $ 39,000 for each of the years 1983 through 1987. Various Additions to Tax
Petitioner presented no evidence and made no argument with respect to the various additions to tax determined by respondent. [7] Consequently, petitioner failed to carry his burden of proving that such additions are incorrect. Accordingly, such additions will be sustained. *348 Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code as in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
*. 50 percent of the interest due on the portion of the underpayment attributable to negligence. Respondent determined that the entire underpayment for each of the years 1983 through 1987 was attributable to negligence.↩
2. Respondent conceded that petitioner is not liable for the addition to tax for substantial understatement of income tax for 1985.↩
3. Petitioner did not file a return for 1985.↩
4. Petitioner chose not to file any briefs.↩
5. Petitioner's connection to marijuana sales during 1987 is further evidenced by the fact that petitioner pled guilty to one count of possession with intent to sell marijuana and one count of possession of over one pound of marijuana, both of which offenses occurred in December 1987.↩
6. In addition to relying on petitioner's admissions, the agent did an evaluation based on BLS of the minimal income that petitioner would have needed during each of the years at issue. For each of those years, the BLS requisite minimal income was substantially higher than the income reported by petitioner.↩
7. Respondent conceded that petitioner is not liable for the addition to tax for substantial understatement of income tax for 1985. Therefore, petitioner is not liable for that addition to tax.↩