T.C. Summary Opinion 2015-73

UNITED STATES TAX COURT

BRUCE R. HOFFMAN AND DEBRA S. HOFFMAN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21050-10S.                    Filed December 10, 2015.

Bruce R. Hoffman and Debra S. Hoffman, pro se.[1]

<u>Christopher A. Pavilonis</u> and <u>A. Gary Begun</u>, for respondent.

SUMMARY OPINION

GOEKE, <u>Judge</u>:  This case was heard pursuant to the provisions of section

7463 of the Internal Revenue Code (Code) in effect when the petition was filed.[2]

_____

[1]<u>Michael P. Tyson</u> represented petitioners at trial.  Mr. Tyson entered his appearance in October 2014 and filed a motion to withdraw on February 20, 2015, which the Court granted on February 25, 2015.  Bruce R. Hoffman submitted all briefs for petitioners.

[2]Unless otherwise indicated, section references are to the Internal Revenue

(continued...)

Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined deficiencies and accuracy-related penalties for 2004, 2005, and 2006 as follows:

| Year | Deficiency | Penalty sec. 6662(a) |
|------|-----------|----------------------|
| 2004 | $7,114 | $1,423 |
| 2005 | 6,613 | 1,323 |
| 2006 | 6,296 | 1,259 |

After concessions,[3] the issues for decision are:

_____

[2](...continued)
Code in effect at all relevant times, Rule references are to the Tax Court Rules of Practice and Procedure, and dollar amounts are rounded to the nearest dollar.

[3]Respondent concedes that petitioners are entitled to a reduction in other income reported on Schedule C, Profit or Loss From Business, of $16,500 for 2005. Additionally, respondent determined that petitioners are entitled to additional deductions on Schedules C for taxes and licenses of $1,433, $2,450, and $2,982 for 2004, 2005, and 2006, respectively. We note that respondent listed these additional deductions as an issue on brief but did not provide any argument. Because respondent allowed the deductions in the notice of deficiency, made no argument against the deductions, and presented no evidence that petitioners were not entitled to additional deductions for taxes and licenses, this issue is deemed conceded by respondent. See also Rule 142. The notice of deficiency also included an itemized deduction computational adjustment and self-employment tax computational adjustments. These issues are to be resolved in the parties' Rule 155 computations consistent with the Court's opinion.

(1) whether petitioners are entitled to various deductions in excess of those respondent allowed from petitioners' Schedules C for the years at issue. We hold that they are not;

(2) whether petitioners have unreported Schedule C gross receipts or sales for the years at issue. We hold that they do;

(3) whether petitioners are liable for section 6662(a) accuracy-related penalties for the years at issue. We hold that they are; and

(4) whether Mrs. Hoffman is entitled to relief from joint and several liability under section 6015(b). We hold that she is.

## Background

Petitioners resided in South Carolina at the time they petitioned this Court for redetermination of the determined deficiencies and accuracy-related penalties. Petitioners filed Forms 1040, U.S. Individual Income Tax Return, claiming married filing jointly status for 2004, 2005, and 2006.

Mr. Hoffman obtained a bachelor's degree in history from the University of Maryland, a law degree from Southwestern University School of Law, and a master's in tax law from New York University. Mr. Hoffman has been practicing law since 1984 and is admitted to practice in South Carolina, California, District of Columbia, and before this Court. During the years at issue Mr. Hoffman was

the sole member and manager of the Law Office of Bruce R. Hoffman, LLC (law office). The law office is a general practice with an emphasis in tax, estate planning, probate, business, and real estate.

Mrs. Hoffman holds a bachelor's degree in political science and has no background in finance. In 2004 and 2005 she was a substitute teacher, and in 2006 she did some work for a newspaper. She was not involved with the finances or business operations of the law office during the years at issue.

Sometime in 2005 petitioners applied for a residential loan. Mr. Hoffman estimated his monthly income at $15,000 on the application. Mrs. Hoffman signed all relevant loan documents.

Notice of Deficiency

Petitioners reported the revenue and expenses attributed to the law office on Schedules C of Forms 1040 for the years at issue. Petitioners reported Schedule C gross receipts or sales attributable to the law office of $151,511, $143,073, and $134,702 for 2004, 2005, and 2006, respectively. Petitioners reported Schedule C total expenses attributable to the law office of $130,142, $140,806, and $85,357 for 2004, 2005, and 2006, respectively.

On the basis of a bank deposits analysis, respondent determined that petitioners had unreported income. In addition, respondent disallowed certain

deductions that petitioners had claimed on Schedules C of the 2004, 2005, and 2006 tax returns.

Schedule C Unreported Income

During the years at issue petitioners maintained bank accounts with BB&T and Lowcountry National Bank. In 2005 and 2006 petitioners maintained a bank account with First Citizens Bank. And in 2006 petitioners maintained a bank account with Regions Bank. The BB&T account appears to have been the primary account for the law office for 2004 and 2005. The Regions Bank account appears to have been the primary account for the law office for 2006.

Respondent subpoenaed petitioners' bank statements because petitioners did not provide them when requested. After reviewing bank statements and interviewing Mr. Hoffman, respondent performed a bank deposits analysis and removed nontaxable items. Relevant nontaxable items removed include: a $31,790 BB&T credit line and $28,609 in BB&T credit card advances for 2004; a $11,798 credit line advance and a $66,081 in credit card advances for 2005; and a $33,498 First Citizens Bank advance/loan for 2006 (cumulatively, credit card advances). After removing nontaxable items respondent determined that petitioners had failed to report additional Schedule C gross receipts or sales of $9,772, $15,368, and $11,367 for 2004, 2005, and 2006, respectively.

Schedule C Deductions

Deductions for the law office for the years at issue include the following:

| Expense | 2004 | 2005 | 2006 |
|---|---|---|---|
| Supplies | $3,855 | $5,621 | -0- |
| Meals and entertainment | 2,519 | 3,868 | $1,584 |
| Insurance (other than health) | 9,069 | 8,278 | 8,083 |
| Travel | 6,007 | 8,199 | 6,335 |
| Repairs and maintenance | 3,855 | 7,016 | -0- |
| Bad debt | 3,463 | 6,119 | 3,613 |
| Office | 39,808 | 39,902 | 22,103 |

During the audit Mr. Hoffman mailed respondent boxes with copies of checks and invoices in a folder labeled business expenses for each year at issue. The boxes contained no general ledger or spreadsheet or any other document that indicated which expense was deducted under each category. In addition, Mr. Hoffman testified to substantiate Schedule C expenses for the years at issue. Because documents provided for 2005 and 2006 were undifferentiated and unorganized, respondent allowed expense deductions for 2005 and 2006 on the basis of the substantiated expenses for 2004. After the audit was completed, respondent returned all boxes of documents to petitioners.

Respondent allowed deductions for the following Schedules C expenses in the amount specified for each year at issue:

| Expense | Amount |
| --- | --- |
| Supplies | $3,264 |
| Meals and entertainment | 571 |
| Insurance (other than health) | 5,764 |
| Travel | 2,206 |
| Repairs and maintenance | 3,258 |
| Bad debt | 675 |
| Office | 18,674 |

On June 24, 2010 respondent issued petitioners a notice of deficiency determining deficiencies of $7,114, $6,613, and $6,296 and penalties of $1,423, $1,323, and $1,259 for 2004, 2005, and 2006, respectively. Petitioners timely petitioned this Court for redetermination of the determined deficiencies and accuracy-related penalties for the years at issue.

Document Production

On August 7, 2012, respondent sent petitioners a letter requesting that they "provide documentation to substantiate the expenses disallowed in the notice of deficiency" and "[a]lso, identify which deposits * * * are nontaxable for 2004,

2005, and 2006." Petitioners did not provide the information and documents requested.

On February 21, 2014, respondent filed a motion to compel production of documents. Petitioners objected to respondent's motion, stating that "[t]he IRS having already received and had the opportunity to review all this documentation and information, it is burdensome and oppressive on petitioners". In an order dated April 30, 2014, this Court found petitioners' objections to be groundless and ordered them to produce the documents requested.

In a facsimile dated May 30, 2014, respondent informed petitioners that if they needed additional records, such as credit card statements, they "may issue a subpoena to obtain those records" and "[t]he Tax Court website * * * contains information for issuing a subpoena to third parties." Petitioners did not subpoena any additional records.

On June 4, 2014, petitioners moved for reconsideration of the April 30, 2014, order. In their request for reconsideration petitioners sought a protective order and an extension of time to comply with the April 30, 2014, order. This Court then issued an order dated June 20, 2014, denying a protective order and granting an extension of time. The June 20, 2014, order stated in relevant part:

"If respondent does not have copies of [petitioners'] credit card statements, petitioners must obtain those records from their credit card companies or find other evidence to support their position. * * * In order to satisfy petitioners' burden of proving that some of the deposits are nontaxable * * * petitioners first must produce the documents to respondent. * * * Their failure to do so may result in the Court's * * * refusing to allow petitioners to introduce the requested documents as evidence at trial".

On October 17, 2014, respondent filed a second motion to compel production of documents, requesting that petitioners provide documents to substantiate the Schedule C expenses for which deductions were disallowed in the notice of deficiency for the years at issue. Petitioners responded that they "are analyzing their records beginning in tax year 2004 and moving forward and will provide the documentation requested as they progress."

Before trial this Court ordered the parties to exchange any documents or materials they expected to offer into evidence at trial at least 14 days before the first day of the trial session. Petitioners did not exchange any documents.

Respondent made a motion in limine to exclude petitioners' documents not exchanged pursuant to the Court's pretrial order. At trial this Court granted respondent's motion in limine in part to exclude documents that relate to section 274 expenses and allowed the introduction of documents that specifically relate to nontaxable income and other deductible expenses.

Continuances

Petitioners' case at docket No. 12727-10L was originally set for trial beginning February 28, 2011. On January 19, 2011, petitioners moved to consolidate the case at docket No. 12727-10L with the case at hand and moved to continue. This Court granted petitioners' motions and set trial for the week of September 9, 2013.

On May 7, 2013, petitioners again moved to continue. This Court granted petitioners' motion and set trial for the week of December 1, 2014.

On October 17, 2014, petitioners moved to continue a third time. Additionally, petitioners moved for voluntary dismissal in docket No. 12727-10L. We granted petitioners' motion to dismiss.

On October 28, 2014, petitioners moved to have this case conducted as a small tax case pursuant to section 7463. Petitioners also reasserted their motion to continue and moved to have this case tried at an upcoming small case trial session rather than the regular case trial session scheduled. This Court granted petitioners' motion to have the proceedings conducted as a small tax case and denied the motion to continue.

Discussion

I.    Presumption of Correctness

As a general rule, the Court will not look behind a notice of deficiency to examine the evidence used, the propriety of the Commissioner's motives, or administrative policy or procedure used in making the determination. Riland v. Commissioner, 79 T.C. 185, 201 (1982); Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327 (1974). The rationale for this rule is that a trial before the Tax Court is a de novo proceeding, and our decision is based on the merits of the record before us and not on the merits of the administrative record. Jackson v. Commissioner, 73 T.C. 394, 400 (1979); Greenberg's Express, Inc. v. Commissioner, 62 T.C. at 328. We have, however, recognized two limited exceptions to the general rule:  (1) where there is substantial evidence of unconstitutional conduct by the Commissioner, and (2) in the so-called naked assessment cases involving unreported income where the Commissioner introduces no evidence but rests on the presumption of correctness and the taxpayer challenges the notice of deficiency on the grounds that it is arbitrary. Graham v. Commissioner, 82 T.C. 299, 308-309 (1984), aff'd, 770 F.2d 381 (3d Cir. 1985); see also United States v. Janis, 428 U.S. 433, 441 (1976). In neither circumstance has this Court held the notice of deficiency invalid. Graham v.

Commissioner, 82 T.C. at 309; see Riland v. Commissioner, 79 T.C. at 207;

Jackson v. Commissioner, 73 T.C. at 401; Greenberg's Express, Inc. v.

Commissioner, 62 T.C. at 328; Human Eng'g Inst. v. Commissioner, 61 T.C. 61

(1973).

The thrust of petitioners' argument is that the notice of deficiency is invalid

because (1) respondent did not summon petitioners' credit card records and (2)

respondent based expense deductions for 2005 and 2006 on substantiated expense

deductions for 2004. Petitioners contend that the notice of deficiency falls into the

narrow category of a "naked assessment", requiring that "audit * * * results must

be thrown out" because "no real audit was done". We disagree.

On the basis of petitioners' income tax returns for the years at issue, records

petitioners supplied, subpoenaed bank statements, and oral testimony, respondent

determined the deficiencies for the years at issue. Respondent issued a report

explaining that because limited records were provided, oral testimony was

accepted for numerous items and amounts that were substantiated for 2004 were

allowed for 2005 and 2006 because the expenses were recurring. Respondent's

determination does not constitute a "naked assessment", and we will not look

behind the notice.

Moreover, courts have approved the Commissioner's use of estimates, assumptions, extrapolations, and the like in calculating a taxpayer's income. See, e.g., Adamson v. Commissioner, 745 F.2d 541, 547-548 (9th Cir. 1984), aff'g T.C. Memo. 1982-371; Keogh v. Commissioner, 713 F.2d 496, 498-502 (9th Cir. 1983), aff'g Davies v. Commissioner, T.C. Memo. 1981-438. Extrapolation of information from an earlier year to determine the extent of unreported income for a later year may not be an unreasonable approach depending upon all the facts and circumstances. See Day v. Commissioner, 975 F.2d 534, 538 (8th Cir. 1992), aff'g in part, rev'g in part T.C. Memo. 1991-140; Bradford v. Commissioner, 796 F.2d 303, 306-307 (9th Cir. 1986), aff'g T.C. Memo. 1984-601; DeLorenzo v. United States, 555 F.2d 27, 29 (2d Cir. 1977); Jackson v. Commissioner, 73 T.C. at 403. Further, respondent's use of extrapolation to allow recurring deductions for 2005 and 2006 was more favorable to petitioners than denying deductions for those years in full.

The Commissioner's deficiency determination ordinarily is entitled to a presumption of correctness. See Bone v. Commissioner, 324 F.3d 1289 (11th Cir. 2003), aff'g T.C. Memo. 2001-43. However, when the Commissioner determines that a taxpayer received unreported income, the determination in the notice of deficiency must be supported by an evidentiary foundation linking the taxpayer to

an income-producing activity.  See Blohm v. Commissioner, 994 F.2d 1542, 1549 (11th Cir. 1993), aff'g T.C. Memo. 1991-636.  The Commissioner need only provide a minimal showing that the taxpayer failed to report income.  Id.  The presumption of correctness applies once the Court determines that the Commissioner provided the minimal evidentiary showing, and the taxpayer bears the burden of proving that the notice of deficiency is arbitrary or erroneous.  See Weimerskirch v. Commissioner, 596 F.2d 358, 362 (9th Cir. 1979), rev'g 67 T.C. 672 (1977); Jackson v. Commissioner, 73 T.C. at 401; Dunne v. Commissioner, T.C. Memo. 2008-63.

Respondent introduced evidence that Mr. Hoffman was the sole member and manager of the law office and deposited proceeds from his law practice into petitioners' bank accounts with BB&T for 2004 and 2005 and Regions for 2006. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986) (holding that bank deposits evidence receipt of income).  Accordingly, we conclude that respondent laid the requisite minimal evidentiary foundation for the contested unreported income adjustments and that respondent's determinations are entitled to a presumption of correctness.  Therefore, petitioners bear the burden of proving that the notice of deficiency was arbitrary or erroneous.

## II. Burden of Proof

Generally, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that the determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). If, however, a taxpayer produces credible evidence with respect to any factual issue relevant to ascertaining the taxpayer's tax liability and satisfies the requirements of section 7491(a)(2), the burden of proof on any such issue shifts to the Commissioner. Sec. 7491(a)(1). Section 7491(a)(2) requires a taxpayer to demonstrate that he complied with the substantiation requirements, maintained all records required under the Code, and cooperated with reasonable requests for witnesses, information, documents, meetings, and interviews. See also Higbee v. Commissioner, 116 T.C. 438, 440-441 (2001).

Petitioners have neither alleged that section 7491 applies nor established that they complied with the requirements of section 7491(a)(2) to substantiate items, to maintain required records, and to fully cooperate with respondent's reasonable requests. Rather, petitioners argue that because "bank deposit records were used to estimate income when there were income logs and other documentation of income available for all three years, means that the presumption of correctness accorded notices of deficiency do not apply here" and that the

burden should shift to respondent. Petitioners rely on Suarez v. Commissioner, 58 T.C. 792 (1972), to argue that the "burden shifted to [r]espondent" to prove that petitioners had unreported income. Suarez, unlike this case, involved a notice of deficiency determination based on illegally acquired records from the taxpayer. Petitioners' reliance on Suarez here is misplaced as respondent's determination was based on petitioners' bank deposit records, which were lawfully obtained by subpoena. Thus, the burden remains with petitioners to prove that the determinations are erroneous.

III.    Unreported Income

Gross income includes "all income from whatever source derived". Sec. 61(a). Taxpayers are required to maintain books and records sufficient to establish the amount of their gross income. Sec. 6001. If the taxpayer fails to do this, then the Commissioner may reconstruct the taxpayer's income through the use of any reasonable method. See Holland v. United States, 348 U.S. 121 (1954); Giddio v. Commissioner, 54 T.C. 1530, 1532-1533 (1970). The Commissioner's reconstruction need not be exact, but it must be reasonable in the light of all the surrounding facts and circumstances. Petzoldt v. Commissioner, 92 T.C. 661, 687 (1989).

A.     Bank Deposits Method

The "bank deposits" method has long been upheld as a reasonable means of determining income where a taxpayer is unwilling or unable to provide adequate books and records.  DiLeo v. Commissioner, 96 T.C. 858, 867 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992); Fisher v. Commissioner, T.C. Memo. 1997-450.  Bank deposits are deemed prima facie evidence of income, and the taxpayer bears the burden of showing that the deposits were not taxable income but were derived from a nontaxable source.  See Calhoun v. United States, 591 F.2d 1243, 1245 (9th Cir. 1978); Parks v. Commissioner, 94 T.C. 654, 658 (1990) (citing Tokarski v. Commissioner, 87 T.C. 74).  The Commissioner "must take into account any nontaxable source or deductible expense of which * * * [he] has knowledge" in reconstructing income using the bank deposits method.  See Clayton v. Commissioner, 102 T.C. 632, 645-646 (1994).  After the Commissioner reconstructs a taxpayer's income and determines a deficiency, the taxpayer bears the burden of proving that the bank deposits analysis is unfair or inaccurate.  See Id. at 645; DiLeo v. Commissioner, 96 T.C. at 883.  The taxpayer must prove that the reconstruction is in error and may do so, in whole or in part, by proving that a deposit is not taxable.  See Clayton v. Commissioner, 102 T.C. at 645.

Using the bank deposits method, respondent determined that petitioners had unreported income for the years at issue. Respondent determined that Mr. Hoffman received $9,772.26, $15,368.47, and $11,366.91 of unreported income related to the law office for 2004, 2005, and 2006, respectively. The record indicates that petitioners' income logs and other documentation of income were not readily understandable. Petitioners did not produce bank statements when they were requested; thus, respondent summoned the bank records directly from petitioners' banks. We conclude from the record that respondent reasonably relied on the bank deposits method to determine petitioners' income, and petitioners bear the burden of proving that respondent's bank deposits analysis is unfair or inaccurate. See sec. 446(b); Petzoldt v. Commissioner, 92 T.C. at 693; sec. 1.446-1(b)(1), Income Tax Regs.

B.    Bank Deposits Analysis

Petitioners argue that respondent's bank deposits analysis is inaccurate. Mr. Hoffman contends that all income was correctly reported and that any additional deposits were from credit card advances. Mr. Hoffman, however, has not provided any documentation or other credible evidence supporting his contention. At trial Mr. Hoffman was asked how he knew specific items were not taxable. In response Mr. Hoffman testified that "the credit card statements would've showed that if

* * * [respondent] summonsed those like I asked". Respondent removed $60,399, $77,879, and $33,494 in credit card advances from taxable income for 2004, 2005, and 2006, respectively. Petitioners offered no objective evidence that any deposits identified by respondent were nontaxable for the years at issue.

Section 7602 authorizes the Commissioner to issue an administrative summons to compel the taxpayer and third parties with relevant information to produce books and records and testify. Nothing in section 7602 requires the Commissioner to issue a summons. Petitioners were informed by both respondent and this Court that if they wished to obtain their credit card records, they had to personally get them from their credit card companies. Petitioners chose not to subpoena their credit card records and now attempt to rely on records they themselves failed to maintain and subsequently failed to acquire. We decline to accept Mr. Hoffman's self-serving and unverified testimony that certain deposits were nontaxable. See Tokarski v. Commissioner, 87 T.C. at 77.

IV.     Schedule C Expenses

Deductions are a matter of legislative grace, with the taxpayer bearing the burden of proving entitlement to the deductions claimed. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Taxpayers bear the burden of substantiating the amount and

purpose of any claimed deduction. See Hradesky v. Commissioner, 65 T.C. 87 (1975), aff'd, 540 F.2d 821 (5th Cir. 1976). Taxpayers are required to maintain sufficient records to establish the amounts of income and deductions. Sec. 6001; Higbee v. Commissioner, 116 T.C. at 440; sec. 1.6001-1(a), Income Tax Regs. In some circumstances, this Court may apply the Cohan rule to estimate an expense that a taxpayer establishes is deductible but does not otherwise substantiate the precise amount of. See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). This Court may apply the Cohan rule, however, only if the record supplies a basis upon which to estimate the deductible expense. See Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

Section 162(a) allows as a deduction "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business". See Boyd v. Commissioner, 122 T.C. 305, 313 (2004). Certain deductions, including those relating to travel, meals, and entertainment, are subject to heightened substantiation requirements. See sec. 274(d). In deciding whether a taxpayer has satisfied his or her burden of substantiating a deduction, we are not required to accept the taxpayer's self-serving testimony. Tokarski v. Commissioner, 87 T.C. at 77.

Petitioners argue that they have numerous boxes of documents in support of their claim that expenses underlying all their claimed deductions were adequately substantiated and that these boxes should have been admitted into evidence. Petitioners' own counsel described the boxes as containing "a range of somewhat organized to not organized at all; expense information, receipts, checks, their cancelled checks, bank statements." Respondent first requested these substantiating documents from petitioners in August 2012 and continued to request documents up until trial in December 2014. Petitioners, however, did not comply with respondent's requests.

Because petitioners did not exchange any documents, respondent made a motion in limine to exclude all documents not exchanged. We granted respondent's motion in part, stating that we would "consider specific documents that are tied to specific points of testimony or that * * * relate to [r]espondent's income determinations or would, in fact, support specific, well organized discussions of Schedule C expenses that are not subject to Code section 274". We provided petitioners the opportunity: to include documents related to Schedule C expenses in a supplemental stipulation of facts; to make an offer of proof at trial; and to testify as to their expenses. Petitioners did not avail themselves of this opportunity. At trial Mr. Hoffman provided limited testimony regarding expenses

which did not establish the "general total amount of the [business] expenses" to allow an estimation under Cohan. See Charron v. United States, 200 F.3d 785, 794 (Fed. Cir. 1999). We therefore sustain respondent's disallowance of the claimed deductions in excess of the amounts allowed.

V.    Section 6662(a) Penalty

The Commissioner bears the burden of production on the applicability of an accuracy-related penalty in that he must come forward with sufficient evidence indicating that it is proper to impose the penalty. See sec. 7491(c); see also Higbee v. Commissioner, 116 T.C. at 446. Once the Commissioner meets this burden, the burden of proof remains with the taxpayer, including the burden of proving that the penalty is inappropriate because of reasonable cause and good faith. See Higbee v. Commissioner, 116 T.C. at 446-447. "Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer." Sec. 1.6664-4(b)(1), Income Tax Regs.

Section 6662(a) and (b)(1) and (2) imposes a 20% accuracy-related penalty if any part of an underpayment of tax required to be shown on a return is due to negligence or disregard of rules or regulations or a substantial understatement of

income tax. The penalty is 20% of the portion of the underpayment of tax to which the section applies. Sec. 6662(a). Respondent determined that petitioners are liable for an accuracy-related penalty under section 6662(a) because their underpayments for the years at issue resulted from negligence or disregard of rules or regulations and were due to substantial understatements of income tax as defined by section 6662(d).

The term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws, and the term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c); sec. 1.6662-3(b)(1) and (2), Income Tax Regs. "'Negligence' also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly." Sec. 1.6662-3(b)(1), Income Tax Regs.

Respondent argues that petitioners' failure to keep and produce documentation substantiating income and expenses supports the imposition of the accuracy-related penalty for negligence for the years at issue. Respondent also argues that as an attorney with specialized knowledge in tax law, Mr. Hoffman should have been aware of his duty to maintain adequate records of income and expenses.

Petitioners do not contend that they acted with reasonable cause and in good faith in the preparation of their income tax returns. Rather, petitioners argue that they had legitimate arguments for all deductions claimed; however, petitioners failed to present any documentation supporting their claim. And petitioners did not present any arguments in brief or at trial relating to specific deductions claimed.

We agree with respondent. Consequently, we hold that petitioners are liable for accuracy-related penalties under section 6662(a) for the years at issue with the amounts of those penalties to be determined by the parties in their Rule 155 computations.

## VI. Relief From Joint and Several Liability

In general, married taxpayers who file a joint return are jointly and severally liable for the tax arising from the return. Sec. 6013(d)(3). Section 6015 allows a spouse to obtain relief from joint and several liability in certain circumstances. Except as otherwise provided in section 6015, the taxpayer bears the burden of proving that she is entitled to section 6015 relief. Rule 142(a). Both the scope and standard of review in cases requesting relief from joint and several liability are de novo. Porter v. Commissioner, 132 T.C. 203, 210 (2009).

A taxpayer may seek relief from joint and several liability under section 6015(b) if: (1) the taxpayer has filed a joint return for the taxable year, (2) on the return there is an understatement of tax attributable to the other taxpayer, (3) the taxpayer establishes that in signing the return she did not know and had no reason to know of the understatement, (4) taking into account the facts and circumstances, it is inequitable to hold the taxpayer liable for the deficiency attributable to the understatement, and (5) the taxpayer elects relief from joint and several liability within two years of the beginning of the collection activities. These conditions are stated in the conjunctive, and the taxpayer must satisfy all five in order to be awarded relief. Alt v. Commissioner, 119 T.C. 306, 313 (2002), aff'd, 101 F. App'x 34 (6th Cir. 2004).

Respondent contends that Mrs. Hoffman failed to satisfy the third requirement.

If this case were appealable, appeal would lie in the Fourth Circuit. Because the Court of Appeals for the Fourth Circuit has not spoken on this issue, we will apply the standard of whether "a reasonably prudent taxpayer under the circumstances of the spouse at the time of signing the return could be expected to know that the tax liability stated was erroneous or that further investigation was warranted." Bokum v. Commissioner, 94 T.C. 126, 148 (1990) (quoting Stevens

v. Commissioner, 872 F.2d 1499, 1505 (11th Cir. 1989), aff'g T.C. Memo. 1988-63), aff'd, 992 F.2d 1132 (11th Cir. 1993).  In establishing that she had no reason to know, the taxpayer must show that she was unaware of the circumstances that gave rise to the error and was not merely unaware of the tax consequences.  Id. at 145-146; Purcell v. Commissioner, 86 T.C. 228, 237-238 (1986), aff'd, 826 F.2d 470, 473-474 (6th Cir. 1987).  This standard applies to an understatement of tax resulting from underreporting income and from improperly claiming deductions.  Bokum v. Commissioner, 94 T.C. at 148.

Respondent argues that Mrs. Hoffman knew or had reason to know of the understatement of tax attributable to the underreporting of gross receipts on the Schedules C because (1) she had signature authority over the family's bank accounts and (2) she signed a mortgage application which estimated Mr. Hoffman's monthly gross income higher than was reported on the income tax returns for 2004 and 2005.

Mrs. Hoffman was not involved with the law office business and had no knowledge of the law office income.  Additionally, we are not persuaded that an estimate of income on the loan application gave Mrs. Hoffman reason to know of the underreported income.

A review of the return would have revealed Mr. Hoffman's reported gross receipts and claimed business expense deductions. However, a review of these items on the return would not necessarily have revealed that Mr. Hoffman's gross receipts were underreported or that his expense deductions were overstated. See Phemister v. Commissioner, T.C. Memo. 2009-201.

Taking into account all of the facts and circumstances that may be drawn from the record, we conclude that it would be inequitable to hold Mrs. Hoffman liable for the deficiencies in tax attributable to Mr. Hoffman. Accordingly, Mrs. Hoffman has satisfied all the requirements for relief under section 6015(b) with respect to the understatements of tax for the years at issue. We hold that she is entitled to relief under section 6015(b).

In reaching our holdings herein, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

Because of concessions and computational adjustments,

Decision will be entered under Rule 155.